## Foster *against* The Commonwealth.

For an act which happens to be both a public and a private wrong, the public and the party aggrieved each has a distinct concurrent remedy, the former by indictment, and the latter by an action suited to the particular circumstances of his case: the 26th and 27th sections of the Act of 16th June 1836, which provides the remedy and punishment for publications respecting the conduct of Judges of the court, do not alter this principle with regard to offences of that kind.

Upon an indictment for a misdemeanor, and a demurrer by the Commonwealth to a plea in bar of the defendant, which contains no confession of facts which constitute guilt, a judgment against the defendant is that of *quod respondeat ouster*.

ERROR to the Court of Quarter Sessions of *Allegheny* county.
This was an indictment found against James Heron Foster for having composed and published a libel upon the Hon. Robert C.

G *

Grier, President Judge of the District Court of Allegheny county. To this indictment the defendant put in the following special plea:—

And the said James Heron Foster, by T. J. Fox Alden, his attorney, comes and defends the wrong and injury when, &c., and says that the said Commonwealth ought not to have and maintain the indictment aforesaid against him the said J. Heron Foster, because he says that the whole of the libellous matter charged in the indictment aforesaid refers to the proceedings aforetime had in a certain indictment, entitled *The Commonwealth* v. *William Flinn and Hiram Kaine,* prosecuted at the March Session, A. D. 1844, held in and for the county of Allegheny, and during the pendency of the same in judgment; and that the defendants above named, William Flinn and Hiram Kaine, on a plea of not guilty by them pleaded to the said indictment, and issue joined by the said Commonwealth, were tried and convicted before a jury duly empannelled and sworn in said court on the 9th day of April, A. D. 1844, and that the said issue was pending before the Hon. Benjamin Patton and his Associates, duly commissioned as Justices of said Court of Quarter Sessions in and for said county, in judgment, until the 24th day of April, A. D. 1844, and on said 24th day of April, A. D. 1844, the said court pronounced sentence on the aforesaid William Flinn and Hiram Kaine, (*pro ut patet per recordum,*) and the said J. Heron Foster further saith, that the private prosecutor, Hon. R. C. Grier, in the indictment now pending in the aforesaid Court of Quarter Sessions, in and for the county of Allegheny, entitled *Commonwealth* v. *James Heron Foster,* (see Indict.) has heretofore, to wit on the 24th day of April, A. D. 1844, by his attorney, James Dunlop, Esq., brought his action at law in the District Court of Allegheny county, in this Commonwealth, against the said James Heron Foster, entitled No. 28, July Term, 1844, claiming damages in the sum of five thousand dollars, of and from the said J. Heron Foster, all of which appears of record, being of and concerning a libellous publication by the said J. Heron Foster, aforetime printed and published in a newspaper in the city of Pittsburgh, of and concerning the aforesaid Hon. Robert C. Grier, being of and concerning the same subject matter charged in the indictment aforesaid, entitled *Commonwealth* v. *James Heron Foster,* June Sessions, Allegheny county, Pa., as by reference to the record of said District Court and said process and indictment, *Commonwealth* v. *James Heron Foster,* Allegheny Sessions, June Term, 1844, will more fully at large appear; and this the said James Heron Foster is ready to verify: Wherefore he prays judgment if the said Commonwealth ought to have and maintain the said indictment against him.

To this plea there was a general demurrer and joinder.

The court below (PATTON President) rendered a judgment against the defendant of *quod respondeat ouster.*

[Foster v. The Commonwealth.]

The question now presented was whether the prosecutor, having made his election of a civil remedy, was not barred by the provisions of the Act of 16th June 1836, sec. 27, from prosecuting this indictment.

*Alden,* for plaintiff in error, cited 1 *Chit. Crim. Law* 389, 696; 2 *Burr.* 719; Sec. 23, 26, 27 of the Act of 16th June 1836.

*Dunlop,* contra, cited 1 *Dall.* 319; 14 *Serg. & Rawle* 429; 2 *Serg. & Rawle* 114; 3 *Yeates* 116; 7 *Watts* 179; 4 *Serg. & Rawle* 73; 8 *Serg. & Rawle* 130; 3 *Penn. Rep.* 49; 10 *Eng. Com. Law* 166.

The opinion of the Court was delivered by

GIBSON, C. J.—The plea before us is bad in every view of it. It is written on the hornbook of the law, that the public and a party particularly aggrieved, may each have a distinct but concurrent remedy for an act which happens to be both a public and a private wrong. Thus a person beaten may prosecute an action for the battery, while the Commonwealth prosecutes an indictment for the breach of the peace; or a nuisance may be visited by indictment as a public wrong, while it is visited by action as a private injury; and, for reasons equally good, a libeller may be punished as a disturber of the peace, while he is made to respond in damages by the person libelled, as a defamer of his character. True it is, that the King's Bench will not grant an information at the instance of one who is proceeding by action; and that, as was said by Lord MANSFIELD, the Attorney General would grant a *nolle prosequi* in the case of an indictment found; but neither Lord MANSFIELD, nor any other Judge, has said that this is not of grace, or that any matter can be pleaded which is not of right. If it were the latter, why apply to the Attorney General or the court? Before the Act of 1819, a *nolle prosequi* might have been had in like circumstances; for it is new to me that the Attorney General had not power to grant it. Except for the interference of the crown officers in England, no one will affirm that an action and an indictment for a libel might not be sustained there; and why not here?

It is said the provisions of the 26th and 27th sections of the Act of 1836 preclude it. They ordain that " no publication out of court respecting the conduct of the Judges, officers of the court, jurors, witnesses, and parties, or any of them, on a question depending before such court," shall be a CONTEMPT punishable by ATTACHMENT; " but that the party aggrieved by it may proceed against the author, printer, and publisher, or either of them, by indictment; *or* he may bring an action at law and recover such damages as a jury may think fit to award." The argument is that the word ' or,' in the last clause, was used disjunctively with

[Foster v. The Commonwealth.]

design to restrain the party to a choice of the remedies, and to preclude a recourse to both; and it would be a plausible one were libel a private injury only, for the party would not be entitled to a double satisfaction. But the public has a separate and substantial interest in the suppression of those publications which often produce violence, and sometimes bloodshed. Surely the Legislature did not design to leave libels on the ministers of the law, more than libels on any one else, to the exclusive correction of private prosecution; or to establish a difference between publication before, and publication after the determination of the cause in respect to which the minister's conduct has been aspersed. Why give an indictment under any circumstances, if the private wrong were alone to be redressed? or why subject the act to double prosecution for matter published after the determination of the cause, which would have no influence on the event of it, and not for matter published before it, which might have a pernicious one? It follows neither necessarily nor naturally, from the use of this disjunctive conjunction, that the Attorney General and the party injured must settle between themselves their pretensions to the right of exclusive prosecution, or that an entry into the field by the one is an ouster of the other; and it is not a little singular, that what is supposed to give colour to the notion is a studious, but over-cautious saving of the rights of both. But their rights are, essentially consistent, and it certainly has not been expressly said that the exercise of them shall not be concurrent. Every statute is to be brought as near as may be to the common law, which is to be displaced no further than is necessary to make room for the remedy, and not to be repealed by anything less than express enactment or unavoidable implication. Neither of these is found in the Statute before us; and its meaning is consequently to be gathered from the context rather than from the use or omission of particular words. Legislation is necessarily too rapid to allow much time for the discussion of motions to amend, or for the allowment of precision in the application of terms; and verbal criticism in the interpretation of statutes is consequently of little account. To show the absurdity of it requires no more than to point out the grammatical effect of the copulative ' and,' in another clause of the same section. It is enacted that the party may proceed against " the author, printer, *and* publisher," which means, in strictness, a single person in whom the three characters are combined; but that the Legislature spoke of them as existing in distinct persons, is apparent from the additional words, " or either of them." Here, then, is an undoubted copulative accidentally used in a disjunctive sense; and why may not the disjunctive word ' or' have been accidentally put for a copulative in the same sentence? Had the word ' and' been put in its place, as it would had the Legislature been hypercritical, would it have followed that there could be no indictment without

[Foster v. The Commonwealth.]

an action, or no action without an indictment? Yet the argument for it would have been as legitimate as the one that has been attempted. To say no more of that, why should it be thought the Legislature intended to put libel on a more favoured footing than any other misdemeanor? or to favour a libel on the ministers of the law more than on any one else? or to trammel the prosecution of such a libel still more, when it might corrupt the streams of justice, than when it could have no such effect? There could be no motive for it but to make this particular sort of libel a privileged offence; and to impute it to the legislature, would be itself a libel. It is said the liberty of the press is to be taken into consideration. It is best protected, however, when the citizen is free from antecedent restraint in the use of it, but open to the severest animadversion of the law, for public as well as private injuries from the abuse of it. In some of our sister States, where the laws are feebly executed, an editor enjoys no more freedom of publication than he can maintain with the pistol or the knife. Is that a wholesome state of the press? Yet it must inevitably come to that, wherever its power is a despotism tempered only by assassination; and that assassination will be resorted to in default of redress by the law, has been shown by more instances than one. No freeman would bear a self-constituted censor's contumely and scorn, without an attempt to requite it; and such is the infirmity of our nature, that a sensitive man, stung to madness by being turned away from the tribunals without redress for an outrage to the feelings of his wife or daughter, would compass revenge by the most desperate and wicked means. What is the worth of an action against a man who has nothing to lose, and whose person may be freed from confinement, by the Insolvent Laws, at the end of sixty days? For good or for evil, the press is omnipotent; and there is no slavery more galling, or condition more deplorable, than that of a man who is exposed to its attacks in the hands of profligate and irresponsible men, destitute perhaps of even common humanity. Such a state of things, it certainly was not the purpose of the legislature to encourage. The truth is, the framers of the Statute thought they were not dealing with the Law of Libel or the liberty of the press at all; for there is not a word in it about either. The end in view was to abolish the obnoxious process of attachment for contempt, in all but a few specified cases; not to narrow a libeller's liability to punishment, by interdicting any procedure which allows him the benefit of trial by jury. There are but few members of the profession who either do not remember or have not heard of *Passmore's Case,* by which the Legislature were stimulated to action. The public mind had been roused, by what was thought at the time to be an arbitrary and unconstitutional conviction of that person, though he had certainly incurred the common law punishment due to a contempt of the court, by placarding a gentleman of great respectability, for his

VIII.—11

[Foster v. The Commonwealth.]

defence of a cause depending in this court, to which he was a party. The complainant had laid his griefs before the House of Representatives; the power of the courts to inflict summary punishment for contempt had been canvassed in the Legislature, in the press, and in the assemblies of the people; the Judges had been impeached, tried, and acquitted: and the Legislature, having waited till the ferment had subsided, removed the cause of offence by enacting the original Statute, whose substance, including the words under consideration, we have before us, without a thought of mitigating the Law of Libel, or securing the liberty of the press. Not a word had been said, during the period of agitation, about either. The entire scope of the revised act shows that purpose was no more than to regulate the trial and punishment of contempts; and, looking to the old law, the mischief, and the remedy, we entertain not a doubt that the common law has been altered in relation to nothing else.

But the desired interpretation would not help the plea; for a libel would not be protected by the Statute unless it were not only a reflection on a minister of justice, but also a contempt of court in a pending cause. Other libels are indisputably left to their former measure of prosecution and punishment. It was, as I have said, to abolish the process of attachment for contempts, and not to restrain the prosecution of libels by indictment and action, that the legislature interposed. The subject is introduced in the twenty-third section of the revised Act with the emphatic declaration that " The power of the several courts of this Commonwealth to issue *attachments* for *contempts*, shall be restricted to the following cases, to wit :" then follows a specification of the excepted cases, which is succeeded by the sections under consideration. Now, neither of these speaks of publications as libels, or pretends to regulate the prosecution or punishment of them as such. Indeed the word is not to be found in any part of the Act; nor was it necessary to introduce it, for a publication may be a contempt without being a libel, and an act may be a contempt without being a publication. The twenty-sixth section provides that no publication respecting the officers, parties, or witnesses, or respecting a cause pending, shall be punished as a contempt by attachment. The twenty-seventh provides that if such publication " improperly tend to BIAS the minds of the public, or of the court, the officers, jurors, or witnesses, or any of them, on a question *before the court*," it shall be lawful for the injured party to proceed by indictment or action as already stated. Now the defendant is charged, in the indictment before us, not with a publication tending to create an improper bias in regard to a pending cause, but to defame the prosecutor as the Judge of a court in which the cause was not pending. On that ground alone his cause would be decisively out of the protection of the Statute; for the plea would not answer the indictment.

[Foster v. The Commonwealth.]

Again.　Though every contempt is not a libel, every libel which would be within the benefit of the attempted interpretation, ought to be a contempt; but how a libel on the President of the District Court could be a contempt of the Quarter Sessions, cannot be conceived.　The publication laid in this indictment, was certainly a libel on the President of the Quarter Sessions; and had the defendant been prosecuted for it by indictment and action, the question whether the Commonwealth could proceed, might have been raised.　A libel on the person who is the President of the District Court, touching his acts as a witness or prosecutor in the Quarter Sessions, would doubtless have been a contempt of the latter within the meaning of the Statute.　But though he may have been, and probably was a witness or prosecutor in the case of the *Commonwealth* v. *Flinn*, to which the publication referred, the fact is not averred in the plea; and on a demurrer to it, we can look at nothing else.　It contains an averment that he prosecutes the indictment before us, but not that he prosecuted the indictment mentioned in the publication.　He who claims the benefit of an exception, must bring himself within it by proper averments; and the defendant has not done so.

But though the plea is bad, the judgment on the demurrer may be inappropriate; and if final judgment ought to have been pronounced on him in the court below, we ought to pronounce on him here.　The ruling principle of this part of the case was settled in *Barge* v. *The Commonwealth*, (3 *Penn. Rep.* 262), in which the proper judgment on an insufficient plea of *auter fois acquit*, in a case of misdemeanor, was held to be *respondeat ouster*. There, as here, the plea was not in abatement but in bar.　The point had shortly before been ruled differently in *The King* v. *Taylor*, (3 *B. & C.* 502), but we find nothing in the reasons for the decision sufficiently cogent to draw us from our principle. Chief Justice Abbot put the opinion of the court on the common law rule, which prohibits, where life is not jeoparded, the use of more pleas in bar than one.　True it is, that the 4 and 5 Anne c. 16, which enables a plaintiff to plead as many pleas as he has grounds of defence, is expressly confined to civil cases; yet the Judges have abolished the rule in felony and treason, without the authority of a statute, so far as to allow the prisoner to plead over after an insufficient plea in bar.　And it seems the exception extends to cases in which, though the judgment is capital, the felony is clergiable.　According to Mr. Chitty, (*Crim. L. vol.* 1, *p.* 434), though it does not extend to misdemeanors as matter of *right*, yet it is in the *discretion* of the court to allow him still to plead not guilty; and this, he says, will be done where the punishment is severe.　Listening to the voice not of humanity but justice, we have carried this discretion a single step further, by applying it to all cases, without regard to the punishment, in which the plea contains no confession of facts which constitute guilt.　The judgment,

[Foster v. The Commonwealth.]

therefore, is right; but as the indictment is still pending, the writ of error issued improvidently. On receiving the record from us, the Judges of the Quarter Sessions will proceed on it as if it had not been removed.

HUSTON, J., *dissenting.*—In 2 *Burrows* 720, on an application to show cause against an information which had been moved, Lord MANSFIELD says, " If the prosecutor had proceeded in the method which he had a strict and legal right to proceed in, namely, by way of indictment, and if such indictment had been actually found, yet the Attorney General would (on application made to him) have granted a *nolle prosequi* upon such indictment in case it appeared to him that the prosecution was determined to carry on a civil suit at the same time." In *Chitty's Criminal Law* we find the practice to be for the Attorney General, on application to him, to cite the parties before him, and to compel the prosecutor (except in very atrocious cases) to make his election. We have no such practice. I am not aware that any Attorney General has ever acted under such authority, nor that he could do so. This was well known to those who drew our Act of Assembly of the 16th June 1836, sections 26 and 27, which left this discretion with no one.

The reason for the established practice is given in the case cited 2 *Burrows* 720, that the criminal proceeding will oblige the defendant to discover the matter of his defence and evidence, which would be giving the prosecutor an unfair and unreasonable advantage over the defendant in the civil action. The Legislature (and the Law was drawn by gentlemen of great legal ability and personal respectability), provided in plain and perspicuous terms that in this State no prosecutor shall proceed in a criminal and civil proceeding, for any offence described in this Act, and this for the reason above given, as well as many others which will occur to every one who reflects on the subject. I am not for granting impunity to libellers or printers, but as the law has forbidden their punishment in any other than one of two modes, and leaves to the person aggrieved his choice of the modes, I consider myself bound by the law; and that no person can proceed in this State in both a criminal and civil court for the offence specified in the Act cited. Of course I would say, as the civil suit was commenced in April and the indictment sent to the Grand Jury at the Sessions of the following June, that the defendant was not bound to plead to it otherwise than he did, and that he cannot be tried or sentenced on this indictment, unless the civil suit be discontinued.

Something was said about the word " or" being construed to mean " and" in certain cases. It has been properly *so* construed when found in a will :—a devise to one and his heirs or issue, but if he die " under age *or* without issue," then a devise over. Here the devisee may have lawful issue and yet die under age, and to

[Foster v. The Commonwealth.]

effect the plain intention of the testator to provide for the issue, it must mean "under age *and* without issue;" but no case was cited where a devise in the alternative of one thing or another gave both. But in a penal law no liberty of construction is allowed; no authority for so doing was cited, nor can any be found, as I believe.

Writ of error quashed and record remitted.