## Commonwealth *v.* Pascoe, Appellant.

*Sheriffs—Summoning jury—Disqualification of sheriff—Sheriff as prosecutor.*

1. The rule of the common law is that if the sheriff be a party to the suit, or be related by blood or affinity to either of the parties, he is not to summon the jury, but the venire shall be directed to the coroner. If the sheriff is a prosecutor in a criminal case, he is not a party within this rule. The commonwealth and the defendant are the parties in a criminal proceeding.

2. Where the sheriff's duty in summoning jurors is purely ministerial all presumptions are in favor of the regularity of his conduct.

*Libel—Criminal libel—Malice—Inference of malice.*

3. The offense of publishing a malicious and defamatory libel is committed whenever any person shall write, print or publish any malicious or defamatory libel tending either to blacken the memory of one who is dead, or the reputation of one who is living, and thereby expose him to

public hatred, contempt and ridicule. The malice involved in the offense is not necessarily actual ill will entertained by the accused toward the subject of the libel. The law imputes to one who does such a wrongful act a malicious intent. Every responsible person is presumed to intend the natural consequences of his act and is not permitted to deny that he intended them. If the publication be defamatory an inference of malice arises which it is the duty of the jury to find from the character of the publication.

4. Where the interest of the public to know the facts is of more importance than a possible breach of the peace, and these facts are published with good motive and only for the information of individuals or the public who have a right to be informed, a prosecution for libel cannot be maintained provided the publication speaks the truth or is made upon reasonable grounds of belief in its truth. Only those publications are privileged, however, which are made on proper occasion from a proper motive, in a proper manner and based on reasonable and probable cause. And even where the occasion is proper the privilege may be lost if the manner be improper.

5. A newspaper article is libelous which under the title of "Arnold and Andre" charges the prosecutor with being "A Benedict Arnold to the Twenty-second Ward," and "a man distrusted and detested by all parties and all factions;" "a Benedict Arnold to this community."

6. A publication may be privileged in part and libelous in part, and a conviction may be sustained for publishing the libelous part.

Argued Dec. 14, 1908. Appeal, No. 141, Oct. T., 1908, by defendant, from judgment of Q. S. Phila. Co., May T., 1908, No. 164, on verdict of guilty in case of Commonwealth v. David M. Pascoe. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Indictment for criminal libel.

At the trial the prosecution offered in evidence a copy of the " Germantown Telegraph," published under date of February 7, 1908. The article is as follows: "Arnold and Andre. Two figures stood out in the great struggle of the colonies for liberty, and whenever a cause is betrayed, even to this day, the name of Benedict Arnold rises to the lips of every American citizen as a type of all that is dark, reproachful and villainous. For Andre there is, and always has been, a feeling of sympathy, and even regard—regard for the bright qualities of his mind and person, and sympathy that he should have been enmeshed in the toils

of the traitor Arnold. And this is the feeling to-day in the Twenty-second Ward. An undercurrent of sympathy for John W. Davidson, but a bitter detestation for the course of Sheriff Wilson H. Brown. Elected triumphantly on the City Party ticket, on a platform of hostility to the ring, pledging himself over and over again to the best interests of the city, he has now gone boots, saddle and bridle into the camp of the bosses. The pledges that he made have been broken, the regard of his friends is shattered and his own self-respect must be grovelling in the dust. Cold and inscrutable, even his best friends cannot explain his course, and have no apologies for it. Snivelling at the feet of the now dominant bosses, he asks admittance to their councils, and so persistent and pressing are his attentions that a well-known city leader is declared to have said: 'Sheriff Brown would now give his guts to the Organization if he could.' This despicable desertion of the reform movement by the present sheriff of the county is intensified and magnified by reverting to his letter of acceptance when that nomination was tendered him. 'Lest we forget,' the following extracts will serve to demonstrate, in the light of recent events, how thoroughly and suddenly convinced Wilson H. Brown seems to have become of the 'sterling honesty' and the 'filial devotion to public interests' of the men whom he so roundly denounced when asking the people for their suffrage. Here is a portion of his letter:

" 'The people of Philadelphia have witnessed a great uprising against the corrupt political machine which has defied the people's will, plundered the public treasury, seized valuable franchises without compensation and plunged the city into a great burden of debt to pay enormous profits to political contractors. Extravagance, corruption and graft have penetrated almost every municipal department. The platform adopted by the convention contains a masterly statement of the great principles upon which the City Party is founded, and forms the basis of a creed upon which all good citizens can unite for the honor of Philadelphia. I give that platform of principles my earnest and hearty approval and indorsement. I pledge myself to regard this public office as a public trust, to be exercised in

strict accordance with the high standard of principles set forth in the platform of the City Party, and by every act within my power to advance and enforce those principles. Let us all renew our devotion to the great cause of redeeming the city of Philadelphia from the evils which have disgraced it and uplift every department and office of its government to the highest standard of excellence, and to establish it firmly and forever as the greatest and best of American cities.'

" Can any honest voter, desiring to serve the interests of the people of this community, cast his ballot for a candidate whose chief sponsor is a man of such flexible principles? A traitor to his party, a traitor to the reform cause, a Benedict Arnold to this community, Wilson H. Brown's active advocacy of any man or measure will bring nothing but defeat and disaster upon both. We have as a candidate for Select Council in this ward a man of the highest type. A Republican in national politics, a man of large public experience—in fact, the type of a man who truly represents the highest character and citizenship of the community. He would have been the nominee to-day of the Republican Party had he been willing to have pledged himself to do certain things inconsistent with his dignity. But Bayard Henry would make no pledges of any kind. His duty was to his ward and city, and he declined the shackles which were offered him. A big man, he took his part for four years in the Senate of Pennsylvania, and Germantown was never more worthily represented there. He knows the ward, he knows its people. Identified with our institutions, his hand and purse have ever been ready to help along any good cause. The issue of the present campaign is plain. Our candidate is a man of the highest type, who is making a sacrifice to accept the office, a man who is actuated by a high sense of civic duty, a man strong enough to procure what the ward needs in the way of improvements, and to get them, not by subserviently praying and dickering with the bosses, but a man who will demand them as a right and see that we get them. The candidate of the opposition is a man who has always 'gone along,' and he can be depended upon to still go along, and do the bidding of the bosses. Unfortunately, across his candidacy is cast the shadow of the

man who is a traitor to himself, his cause and his party—a man who knows better but does not dare defy his masters; a man who has done many things vitally injurious to the cause of good government by his vacillating course; a man distrusted and detested by all parties and factions—the Benedict Arnold of the Twenty-second Ward."

Verdict of guilty, upon which the prisoner was sentenced to pay a fine of $200 and undergo an imprisonment for the term of six months.

*Errors assigned* were refusal of motion to quash the array of petit jurors, and various instructions.

*Owen B. Jenkins,* with him *John A. McCarthy,* for appellant.—The prosecutor should not have had a trial by a jury which he summoned himself: Munshower v. Patton, 10 S. & R. 334; People v. Tweed, 50 Howard's Pr. 26; People v. Felker, 61 Mich. 114 (28 N. W. Repr. 83); Van Auken v. Beemer, 4 N. J. L. 364; Baylis v. Lucas, 1 Cowper, 112.

The publication was privileged: Com. v. McClure, 1 Pa. C. C. Rep. 207; Charest v. Hurtubis, 2 Quebec Super. Ct. 93; Crane v. Waters, 10 Fed. Repr. 619; Odger v. Mortimer, 28 Law Times (N. S.) 472; Klos v. Zahorik, 113 Iowa, 161 (84 N. W. Repr. 1046).

*William A. Gray,* assistant district attorney, with him *Samuel P. Rotan,* district attorney, for appellee.—The court fell into no error in refusing to quash the array of jurors because the sheriff had summoned them: Com. v. Salter, 2 Pearson, 461; Wallace v. Jameson, 179 Pa. 98; Com. v. Zillafrow, 207 Pa. 274.

The article published by the defendant was defamatory of Brown and therefore a criminal libel unless it was privileged.

If the article published by the defendant was not privileged, truth, absence of actual malice, absence of negligence, and presence of probable cause, separately or taken together, constitute no defense: Com. v. Murphy, 8 Pa. C. C. Rep. 399; Pittock v. O'Niell, 63 Pa. 253; Com. v. Brown, 30 W. N. C. 320; Barr v. Moore, 87 Pa. 385; Com v. Costello, 1 Pa. Dist. Rep. 745; Com. v. Blanding, 20 Mass. 304.

The nature and character of the article published by the defendant was such that it was not privileged in law: Briggs v. Garrett, 111 Pa. 404; Com. v. Brown, 30 W. N. C. 320; Conroy v. Pittsburg Times, 139 Pa. 334; Com. v. Little, 12 Pa. Superior Ct. 636.

OPINION BY HENDERSON, J., April 12, 1909:

There was a challenge to the array of petit jurors which the court overruled and this refusal is made the subject of the first assignment of error. The motion was based on the averment that the jury was summoned by the prosecutor, who was the sheriff of the county and who was therefore disqualified to discharge that part of his official duty. The case of Munshower et al. v. Patton, 10 S. & R. 334, is relied on to sustain the position. In that case the sheriff was a brother of one of the parties, and the subject of litigation was a tract of land. The motion to quash was sustained because of the relation of the sheriff to one of the parties. It was held that he might unite with the commissioners in drawing a jury, but that the power to summon the jury gave him an opportunity to select from the panel and for that reason he had an advantage which the other party did not have, which at common law created a disqualification. The rule of the common law is that if the sheriff be a party to the suit or be related by blood or affinity to either of the parties he is not to summon the jury, but the venire shall be directed to the coroner. If the prosecutor in a criminal case is to be considered a party within this rule the appellant's application should have prevailed, but we are not persuaded that the rule applies in such cases. The commonwealth and the defendant are the parties in a criminal proceeding. It was not to the prosecutor's personal advantage that the defendant be convicted, and the presumption is that his interest was not more than that of any other citizen. The fifth section of the Act of April 20, 1858, P. L. 354, establishing a mode of selecting jurors for the city of Philadelphia, makes it the duty of the sheriff to summon each of the jurors to appear in the court for which he may be drawn to serve as a juror during the ensuing term, of which several notices the sheriff is required to make return under

oath to the proper court, stating the time and manner of such service. The duty so imposed is purely ministerial. The sheriff has no discretion and is required to avouch the fidelity of his acts by an oath. The service may also be performed by a deputy. All presumptions are in favor of the regularity of the sheriff's conduct. It is not alleged now that the sheriff omitted to summon any juror named in the venire or that there was any irregularity, prejudice or favor practiced by him. The case, we think, resembles that of Clark v. Com., 123 Pa. 555, in which the defendant was convicted of murder in the first degree on a complaint made by the sheriff of the county where there was a reward offered for the arrest and conviction of the perpetrator of the crime. There was a motion to quash the array of petit jurors on the ground that the prosecutor was the sheriff of the county and by virtue of his office had the custody of the jury wheel and assisted in drawing the jury for the court of oyer and terminer at the term at which the defendant was called for trial. The motion to quash was overruled and on appeal it was held that the sheriff was not a party to the issue, that he was not disqualified from discharging his official duties as they were merely ministerial, and that in the absence of any charge of misconduct on the part of the sheriff in drawing the jury the court below was not in error in refusing the defendant's application. We think the reasoning of that case should control the one before us. There is not the slightest intimation that the defendant's case was in any way influenced or prejudiced by anything done in summoning the jurors, and the appellant has no just ground for complaint from this aspect of the case.

The defendant was indicted for publishing a malicious and defamatory libel. This offense is committed when any person shall write, print or publish any malicious or defamatory libel tending either to blacken the memory of one who is dead or the reputation of one who is living and thereby expose him to public hatred, contempt and ridicule. This statutory definition only incorporates into the body of the laws of the state a declaration of that which was a misdemeanor at common law. The malice involved in the offense is not necessarily actual ill-

will entertained by the accused toward the subject of the libel. The law imputes to one who does such a wrongful act a malicious intent. Every responsible person is presumed to intend the natural consequences of his act and is not permitted to deny that he intended them. If the publication be defamatory an inference of malice arises which it is the duty of the jury to find from the character of the publication: Pittock v. O'Niell, 63 Pa. 253; Barr v. Moore, 87 Pa. 385. That the article complained of is defamatory is apparent on the face of the paper. Its title is "Arnold and Andre." The prosecutor is declared to be "A Benedict Arnold to the twenty-second Ward," and "a man distrusted and detested by all parties and all factions;" "a Benedict Arnold to this community." He is also characterized by other defamatory expressions. The popular estimate of Benedict Arnold in this country is that he was the embodiment of treachery and baseness; his name is a synonym for infamy. The obvious tendency of such publication would be to subject the person referred to to public contempt, hatred and degradation of character. The defendant, indeed, does not contend that the article is not libelous, but defends the publication on the ground that it is privileged under the seventh section of article I of the constitution and also under section one of the Act of April 11, 1901, P. L. 74. If the publication is privileged it matters not that it affects the reputation of Mr. Brown. Conditions may exist where a newspaper may publish that which is defamatory of an individual without liability to the commonwealth or the person injured. Where the interest of the public to know the facts is of more importance than a possible breach of the peace and these facts are published with good motive and only for the information of individuals or the public who have a right to be informed a prosecution for libel cannot be maintained provided the publication speaks the truth or is made upon reasonable grounds of belief in its truth. Only those publications are privileged, however, which are made on proper occasion from a proper motive, in a proper manner and based on reasonable and probable cause: Briggs v. Garrett, 111 Pa. 404; Conroy v. Pittsburg Times, 139 Pa. 334. And even where the occasion is proper the privilege may be

lost if the manner be improper.  The question whether the publication is privileged is one of law for the court: Barr v. Moore, 87 Pa. 385; Com. v. Little, 12 Pa. Superior Ct. 636.   The learned trial judge instructed the jury that the publication set forth in the indictment was not privileged, and of this instruction the appellant complains.  The criticisms of Mr. Brown do not relate to his official conduct as an officer or man in public capacity, and the constitutional protection which the defendant seeks cannot avail him unless the paper relates to "matter proper for public investigation or information."  The defendant claims that the article treats of a public man about a public matter.  If this were the only subject there would be much force in the appellant's argument, but an examination of the publication shows that a large part of it has no reference to a public matter in a legal sense.  It contains no reference to the official conduct of Sheriff Brown, nor does it set forth any fact which would justify adverse comments upon his conduct rather than that of any other person who saw fit to exercise his rights as an elector in accordance with his own judgment.  The article is not primarily in support of one candidate nor in antagonism to another.  Its title and much of the text is devoted to the private character of Mr. Brown and evidently intended to bring him into disrepute in the community.  It is conceded in the argument of the learned counsel for the appellant that the public would not have the slightest concern in the exercise of his right by a citizen to change his politics and vote for whom he pleased, and this must be evident to all.  But a perusal of the publication shows, we think, conclusively, that it had its origin in the exercise of this very right by Sheriff Brown.  So far as the article was a fair and candid statement of the claims of candidates for the support of their constituents or the reasons why one rather than another of opposing candidates should be supported it could not be the occasion for a successful prosecution for libel.  But a large part of it has no reference to the candidates whose names appear, but is an extreme and unwarranted attack on the private character of a citizen who had a legal and moral right to support any candidate whom he considered most entitled to his suffrage.  The case of Com. v. Little, 12 Pa. Su-

perior Ct. 636, is not unlike this case. It was there held that while portions of the article in question which dealt with facts might be privileged, those portions which characterized the prosecutor were libelous and not privileged. The same process of reasoning is exhibited in Barr v. Moore, 87 Pa. 385. In that case the plaintiff was chairman of a political party and the article published related to his actions in connection with that office, but the court said the defendant went far beyond answering, refuting and denying everything averred or intimated in his address issued by the plaintiff as chairman of his party and it was accordingly decided that the article published by the defendant was not privileged. The liberty of the press is a subject of great importance. It is a safeguard against tyranny and corruption and worthy of constant care; but the security of one's reputation is also guaranteed by the constitution as an inherent and indefeasible right. It is for personal security that governments are organized and maintained, and an individual has a right to lawfully resist the encroachment of unauthorized attacks on his character. Without such right the pursuit of happiness would be impossible.

The court having properly charged, as we conclude, that the publication was not privileged, the evidence offered by the plaintiff was irrelevant. If the article were privileged it would have been competent for the defendant to have proved the truth of the charge or that it was published with a reasonable ground for belief in its truth and that he was not animated by malice, but evidence of this character is only admissible by way of defense where the libelous article is privileged and is not admissible where as in this case the constitution and the statute do not permit the claim of privilege. The offers of evidence separately or collectively do not in our opinion present a state of facts which would have justified the submission of the case to the jury on the question of privilege.

The assignments of error are overruled and the judgment is affirmed.