## McEwen v. Bulletin Company

*Henry Fitzpatrick*, for plaintiff.
*Gregory Harvey*, for defendants.

PRATTIS, *J.*, November 16, 1979—This matter is before the court on plaintiff's motion for sanctions for failure to respond to a notice of deposition.

The pertinent facts are as follows:

Plaintiff instituted this defamation suit seeking damages that allegedly arose from the publication of two articles in the Evening Bulletin in 1974. The first article was published on October 29, 1974 and was headlined, "Report Calls McEwen Worst of 4 Area DA's." The second was published on November 3, 1974, and headlined "Report On 4 DA Officers Becomes A Hot Issue."

At the time these articles appeared in the Bulletin, plaintiff was the District Attorney of Delaware County, Pennsylvania, and a candidate for Congress. Plaintiff alleges that the articles were published with "actual malice" and were instrumental in causing him to lose the Congressional race.

On November 25, 1975, defendants were served with a notice of deposition scheduling the deposition of defendant, Carol L. Ritch, for December 15, 1975. The notice directed her to bring with her

copies of all articles which she had prepared or helped to prepare or investigate during 1974 concerning plaintiff or other Republican political figures in Delaware County, *whether or not those articles were published.* The notice also directed her to bring all notes, memoranda, or written material of any kind relating to such articles. At the deposition, defendants agreed to provide copies of the published articles and on April 20, 1977, approximately 90 articles were produced.

Plaintiff subsequently filed a new notice of deposition of defendant Ritch, which requested substantially the same documents. In addition thereto plaintiff requested notes, memoranda or written material of any kind relating to some 46 articles selected by plaintiff from the group of 90 articles produced in April, 1977. Defendants have refused to provide the "back-up" materials for all articles not in suit, on the grounds of privilege.

Plaintiff admits that he is a public official and that the articles in suit relate to his conduct in performance of his official duties as district attorney.

The question to be determined by this court is whether plaintiff is entitled to compulsory production of documents, characterized as "back-up" materials, relating to those articles admittedly published by the Bulletin and which are not in suit. We have determined that plaintiff is entitled to compulsory production of such materials as relate to those articles published by the Bulletin and which concern him personally. Plaintiff is not entitled to "back-up" material for articles on various other Delaware County political figures.

Plaintiff contends that the material requested is relevant and necessary to sustain his burden of establishing that defendants published the articles in suit with "actual malice."

"Actual malice" has been defined by the United States Supreme Court in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 2d 686 (1964). There the Supreme Court held:

"The constitutional guarantees [of freedom of speech and press] require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." Id. at 279-80, 84 S.Ct. at 726.

The New York Times rule has been statutorily mandated in Pennsylvania by 42 Pa.C.S.A. §8344, which provides: "In all civil actions for libel, no damages shall be recovered unless it is established . . . that the publication has been maliciously or negligently made . . ."

Plaintiff contends: "To prove actual malice, plaintiff may well want to establish a pattern or policy of the Bulletin and its reporters to slant its political coverage against the Republican Party in Delaware County. Said proof would, of course, have a large bearing upon the issue of whether there was actual malice toward plaintiff." Plaintiff therefore concludes that the requested "back-up" materials are relevant and discoverable pursuant to Pa.R.C.P. 4001-4025. Further, plaintiff argues that there exists no privilege under which defendants may claim to avoid compulsory production of the requested documents.

It must be kept in mind that plaintiff is asserting a personal cause to compensate actual harm to his own reputation. The gravamen of his suit concerns that which was *in fact* published about him, and

defendants' liability, if any, ultimately depends upon defendants' state of knowledge of the falsity of what was published, not on defendants' motivation in publishing the article.

Early on, the Pennsylvania courts have held: "In its common acceptance malice means ill-will against a person; but in its legal sense it means a wrongful act done intentionally, without just cause or excuse . . ." Barr v. Moore, 87 Pa. 385 at 393 (1878). Ill will and a desire to do harm are not alone sufficient to show legal malice: Henry v. Collins, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed. 2d 892 (1965). Further, the standard by which defendants' reckless disregard for the truth or falsity of the articles in suit will be measured has been enunciated by the U.S. Supreme Court in St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed. 2d 262 (1968): "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."

Malice has been found, however, where there was "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." Curtis Publishing Co. v. Butts, 388 U.S. 130, 158, 87 S.Ct. 1975, 18 L.Ed. 2d 1094, 1113 (1967). Curtis Publishing Co. involved a libel action filed by a public figure not a public official. The Supreme Court held, however, that the same standards as enunciated in the New York Times case and its progeny applied in this case as well. The evidence at trial was directed both to the truth of the article in suit and to its preparation. The

evidence pointed to serious deficiencies in the investigatory procedure of the article in suit because: 1-the article was not "hot news"; 2-the magazine editors recognized the need for a thorough investigation of the serious charges levied in the article; and 3-elementary precautions were ignored: Curtis Publishing Co., supra, 388 U.S. at 158.

We conclude therefore that "back-up" materials on Bulletin articles concerning various other Delaware County Republican Party politicians are not relevant to plaintiff's burden of showing that as to *this* plaintiff and the subject matter involved in the pending action there was "actual malice."

Pa.R.C.P. 4003.1 permits discovery of any material which is relevant to the subject matter involved in the pending action and which is not privileged. See also, Pa.R.C.P. 4011(c).

Under Pennsylvania law, there exists a conditional privilege against compulsory disclosure of the source of any information procured or obtained by news reporters for the purpose of gathering, procuring, compiling or publishing news: Act of July 9, 1976, P.L. 586, sec. 2, 42 Pa.C.S.A. §5942.* Pennsylvania's "shield-statute" has been interpreted by the Supreme Court of Pennsylvania in Taylor and Selby Appeals, 412 Pa. 32, 40, 193 A. 2d 181, 184-185 (1963). The court held, inter alia, that the words "source of information," as used in the statute, includes individuals and documents. Further, the court noted that, under certain circumstances, the privilege accorded by the statute may be waived but that the waiver only applied to informants'

---

*This Act substantially reenacts Act of June 25, 1937, P.L. 2123, sec. 1, 28 P.S. §330, which was repealed by Act of April 28, 1978, P.L. 202, sec. 2(a)[1203], effective June 27, 1978.

statements which were actually publicly disclosed. Ergo, Taylor, supra, does not permit compulsory disclosure of unpublished material.

Plaintiff argues that the privilege accorded in Taylor is inapplicable here because Taylor involved proceedings before a grand jury and a probe into matters of a criminal nature. We do not agree. The Taylor court specifically determined that ". . . if there were any doubt as to the interpretation, the Statute must be liberally construed in favor of the newspapers and news media." 412 Pa. at 40.

Accordingly, as to this issue, we are bound by the interpretation of the statute by this state's highest court and must find in favor of defendant. We are not unmindful of the fact that the Taylor case arose in the context of a grand jury proceeding. However, its holding has been found to be sufficiently broad to encompass a civil libel action: Hepps v. Philadelphia Newspapers, Inc., 3 D. & C. 3d 693, 722 (1977).

There exists no issue of waiver of the shield privilege in the case at bar because defendants have voluntarily provided the "back-up" material to the first article in suit and will provide the same as to the second article at the deposition of defendant, Kotzbauer, who prepared that article.

A word on the recent Supreme Court's decision in Herbert v. Lando, 99 S.Ct. 1635 (1979), is in order at this point. While the Herbert case is substantially similar to the one at bar in that both cases concern discovery of "back-up" material to alleged defamatory publications, the court in Herbert specifically left to the trial court the duty to supervise pre-trial discovery so as to protect the press from unnecessarily protracted or tangential inquiry. Specifically, the court noted:

434

"To this end, the requirement of Rule 26(b)(1), that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .' Fed. Rule Civ. Proc. 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." 99 S. Ct., at 1649.

Pa.R.C.P. 4003.1, as discussed, supra, while incorporating the broad Federal discovery rule, F.R.C.P. 26(b), permits discovery of all relevant matter which is not privileged. Hence, we return to the question enunciated supra, and hold that the materials sought do not go to the "heart of plaintiff's cause of action" and are therefore not discoverable.

Accordingly, plaintiff's motion for sanctions will be denied.