[No. 16042.    Department Two.    December 14, 1920.]

THE STATE OF WASHINGTON, *Respondent,* v. ISOM
WHITE, *Appellant.*[1]

CRIMINAL LAW (122)—EVIDENCE—COMPELLING ACCUSED TO CRIMI-
NATE HIMSELF. Const., art. 1, § 9, providing that no person shall be
compelled in a criminal case to give evidence against himself is not
violated by permitting physicians to testify as to defendant's men-
tal condition, after having examined him as to his sanity, there
being no objection to the examination.

CRIMINAL LAW (384-386)—APPEAL—PRESERVATION OF GROUNDS.
Error cannot be assigned upon evidence as to the sanity of the
accused at the time of the trial, where no objection was made on
that ground; nor where defendant pleaded insanity at the time of
the trial.

SAME (326)—TRIAL—MISCONDUCT OF OTHER AFFECTING JURORS.
Prejudicial error cannot be predicated upon allowing persons to
enter the jury room to remove a rug while the jury was in con-
sultation, where no word was said and the jury was assembled to
one side.

Appeal from a judgment of the superior court for
Snohomish county, Bell, J., entered March 8, 1920,
upon a trial and conviction of murder.    Affirmed.

*Joseph H. Smith,* for appellant.

*Thos. A. Stiger,* for respondent.

[1]Reported in 194 Pac. 390.

MAIN, J.—The defendant was charged by information with the crime of murder in the first degree. To this information he entered the following plea: (a) that he was not guilty; (b) that, at the time of the alleged crime, and for a long time prior thereto, he was insane and mentally irresponsible; and (c) that such insanity and mental irresponsibility had continued and still existed. The trial resulted in a verdict of guilty of murder in the first degree. The jury also returned a special verdict as follows:

"Q. Shall the defendant Isom White suffer punishment by death? Answer, Yes."

From the judgment entered upon the verdict, the defendant appeals. The first point is that the court erred in permitting two doctors, after having examined the appellant in the reception room in the jail, to testify to his mental condition based upon such examination. The examination took place the day the trial opened. It was at the request of the prosecuting attorney and without the knowledge or consent, so far as the record shows, of the attorney for the appellant. The doctors, in testifying, based their opinion not only upon the physical examination, but upon answers to questions which had been asked of the appellant and which he had answered. The appellant did not object to the examination or to the answering of the questions which were propounded to him. There is nothing in the record to show that he was unwilling either to answer questions or that the examination take place. The doctors did not testify to any statement made by him to them, but, as already indicated, based their opinion as to his mental condition upon the physical examination, as well as upon the answers which he made to the questions. It is claimed that this testi-

14—113 WASH.

mony violated § 9, art. 1, of the constitution of this state which provides, among other things, that

"No person shall be compelled in any criminal case to give evidence against himself. . . ."

There is nothing in the record brought to this court which would indicate that the appellant was compelled or required to do anything, so far as the examination was concerned, which he was not entirely willing to do. The constitutional provision is not applicable to the present facts. The case of *State v. Spangler,* 92 Wash. 636, 159 Pac. 810, upon its facts is very similar to this case, and it was there held that it was not error to permit a doctor to testify as to the defendant's mental condition, after having examined him in the county jail.

The second point suggested is that the testimony was inadmissible on the further ground that it referred to the appellant's condition at the time of the trial and not at the time of the commission of the crime. To this objection, there are two answers: First, the testimony was not objected to for this reason; and second, under the plea entered by the appellant, his mental condition at the time of the trial, as well as at the time of the commission of the crime, was in issue.

The third point is that, after the jury had been sworn to try the case, and after some testimony had been taken, three men, none of whom were officers of the court, were permitted by the bailiff in charge of the jury to enter the jury room. The rooms of the jury consist of two—one council or sitting room and the other a sleeping room. In addition to this, there is a small room for the bailiff who is in charge of the jury. While the jury were in the sitting or council room, the head janitor of the court house, together with a drayman and one other, were permitted to enter

the jury rooms for the purpose of getting a rug which was on the floor of the sleeping room. In entering, it was necessary for them to pass through the bailiff's small room, through the council, or sitting room, and then into the sleeping room. Before they were permitted to enter, the bailiff caused the jurors to assemble on one side of the council room. The bailiff stood between them and the three persons that passed through for the purpose of getting the rug. The rug was obtained, and immediately the parties left the jury room. No word was spoken by any of the parties as they passed through the room to the jury, and no word was spoken by any member of the jury to them, or either of them.

The appellant's showing is only to the effect that three persons were seen coming out of the jury room. From the showing made by the state, it affirmatively appears that no prejudice could have resulted to the appellant by reason of the fact that the parties mentioned were permitted to enter the jury room for the purpose stated, even though it may have been an error of judgment on the part of the bailiff to permit them to do so. The entry was permitted without the direction of the court or the consent of the appellant. The case of *State v. McCormick,* 20 Wash. 94, 54 Pac. 764, is not only distinguishable upon the facts, but it has been modified by the later case of the *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449, where it was said:

"But in addition to this, we think *State v. McCormick* was an extreme case and does not reflect the more modern ideas on this subject. While the rights of the defendant in a criminal action must be maintained, when once the court indulges in consideration of bare possibilities and reverses judgments because it was within the range of possibility that a juror might have received a communication from the outside,

the court will wander from the path of reasonable caution into the hazy realms of fancy; for when imagination waves its magic wand, sober calculation is put to flight. In the case cited, the court, by extending its imagination a hair's breadth, might have concluded that it was conceivable that a communication concealed in a sandwich or biscuit would reach a juror, or would reach him in one of many other ways which are conceivable. In addition, we must indulge some presumptions in favor of the integrity of the jury."

*State v. Place,* 5 Wash. 773, 32 Pac. 736; *State v. Strodemier,* 41 Wash. 159, 83 Pac. 22, 111 Am. St. 1012, and *State v. Bennett,* 71 Wash. 673, 129 Pac. 409, are all cases where the jury had been permitted to separate without the consent of the defendant, and are therefore not a guide to the decision in the present case.

The judgment will be affirmed.

HOLCOMB, C. J., MOUNT, MITCHELL, and TOLMAN, JJ., concur.