(No. 24074.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
PETER CHRISOULAS, Appellant.

*Opinion filed June 11, 1937—Rehearing denied October 7, 1937.*

Wm. Scott Stewart, for appellant.

Otto Kerner, Attorney General, Thomas J. Court-ney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, and Blair Varnes, of counsel,) for the People.

Mr. Justice Herrick delivered the opinion of the court:

Appellant (hereinafter referred to as defendant) was convicted of murder in the criminal court of Cook county and his punishment fixed at death. Judgment was entered and sentence passed by that court on July 22, 1936. A writ of error for review of this judgment was thereafter denied by this court. A petition was filed in the superior court of Cook county on October 21, 1936, alleging that the defendant had become insane since the entry of judgment, and that court, pursuant to the prayer of the petition, stayed the execution for the purpose of granting a trial on that issue. The State's attorney later obtained a dismissal of the proceedings on the ground that the superior court was without jurisdiction. An appeal from that order was allowed and docketed at the December, 1936, term of this court. In the interim, the Governor postponed the day of execution until December 5, 1936. The defendant then appeared before the acting chief justice of the criminal court of Cook county, with a petition under the provisions of the statute, (State Bar Stat. 1935, chap. 38, div. 14, sec. 1, p. 1256,) praying that the last mentioned day of execution be prolonged, and therein alleging the pendency of the appeal from the superior court order dismissing the

insanity proceedings. The petition was accompanied by the affidavit of a physician that the defendant had become insane since the entry of the judgment of death. This petition was denied. The cause was then brought to this court by writ of error and a *supersedeas* was allowed, limited to the insanity proceedings, which had the effect of delaying the execution.

On December 30, 1936, defendant was allowed an appeal by the criminal court to the Supreme Court of the United States from the original judgment of death, entered in the criminal court. The record does not show any *supersedeas* was granted by that court. We dismissed the appeal from the superior court to this court. We also stated, in a bench announcement, that the allegations contained in the petition and the physician's affidavit, under the provisions of the statute, (State Bar Stat. 1935, chap. 38, par. 622, p. 1238,) required a trial on the insanity issue in the criminal court, reversed the judgment of the criminal court, denying defendant the leave to file the petition purporting to show that he was then insane, and remanded the cause. The insanity proceedings were then assigned for trial in the criminal court. The defendant objected, and moved that the proceedings be abated because of the pending appeal to the United States Supreme Court. This motion was denied, and a challenge to the array was then made and overruled. The trial proceeded. A verdict was rendered finding defendant sane, on which judgment was entered. That cause is now before us on appeal from that judgment.

It is first urged by defendant that the appeal to the United States Supreme Court deprived the trial court of jurisdiction. That appeal was from the judgment of death, of July 22, 1936. The instant hearing was originated by the petition of the defendant, prior to the allowance of the appeal to the Supreme Court of the United States, and is of an ancillary character. The sole purpose of the pres-

ent proceeding was to determine whether the defendant had become insane subsequent to his conviction. The appeal did not deprive the criminal court of jurisdiction in the ancillary proceeding to try the issue of insanity. *Spraul v. Louisiana,* 123 U. S. 516, 31 L. ed. 233; United States Supreme Court Rule 36.

The defendant next complains that the trial court committed error in overruling his challenge to the array. His argument rests upon two grounds; first, that on the questionnaire mailed by the jury commissioners to prospective jurymen, there appears this question: "If you have had any difficulty with the law, inform the jury commissioners at the time of your appearance before them." It appears from the record that this question had reference only to law violations, and that the jury commissioners treated prospective jurors as disqualified thereunder if they had a penitentiary record or were habitual violators of laws or ordinances, but were not so disqualified for minor offenses, or merely because they had been arrested,

Defendant's second objection is to the practice of dividing prospective jurors into so-called three months' period groups, for service according to the time of year preferred by such jurors for service, as indicated by their answers to the original questionnaire. It appears from the record that the jury commissioners, after completing their list of electors legally eligible as jurors, made a practice of dividing the list into five groups, the first group comprising the names of those who, in filling out the questionnaire mailed to each prospective juror, had not expressed a preference as to what period of the year they preferred to serve. The other four groups represented so-called period lists, each covering a quarter of the year beginning with the first three months and following with each successive quarter year, divided according to the preferred period for service stated in the answers to the questionnaire submitted to each. Five boxes were then made up, one containing the names of the

no-preference group and one, each, for the four quarter periods of the year, called term period boxes. When any order from the court is brought to the jury commissioners' office for the purpose of selecting a jury, the drawing is made from the then current term period box. Should this be exhausted, the drawing is made from the no-preference box. We fail to find any material statutory violation in the methods used. The record does not indicate that the rights of the defendant were in anywise impaired or prejudiced by any irregularity occurring, and therefore it should not result in a reversal of the judgment on that ground. *Wistrand* v. *People,* 213 Ill. 72; *Siebert* v. *People,* 143 id. 571.

Defendant further urges that error was committed in permitting a physician who was a director of the behavior clinic to testify, and also to refresh his recollection from certain notes made by him concerning examinations made of the defendant, citing in support of his contention, *People* v. *Scott,* 326 Ill. 327. It was held error, in that case, to introduce in evidence a report of physicians in the service of the Department of Public Welfare, finding that the defendant had regained his sanity, the report being based upon an examination of the defendant at the asylum for the criminal insane. It was further held error for the court to appoint expert witnesses to examine the defendant with a view to qualifying them to testify as the court's witnesses for or against the defendant. The situation in that case is substantially different from the facts in the instant case. The record here shows that the court did not appoint any medical experts to examine the defendant. In the instructions to the jury the trial court particularly negatived any such appointment but explicitly stated, in such instructions, that no expert witnesses appearing on either side of the case had been authorized, or sanctioned, by the criminal court or any judge thereof.

As to the question of a witness refreshing his recollection from notes made by him of his examination of the defendant, the notes, or so-called report, were not offered or admitted in evidence. The witness merely used the notes from time to time for the purpose of refreshing his recollection of the details of the examinations he made of the defendant. This was permissible. *People* v. *Krauser,* 315 Ill. 485, at page 508.

The defendant complains that the court refused to give to the jury nine special interrogatories tendered by him, the first five embracing the specific tests of sanity mentioned in *People* v. *Scott, supra,* and which were specifically covered in the given instructions. The other four required findings of the mental age of the defendant, as to whether he had epilepsy, was feeble minded or was insane. These were not tendered to opposing counsel before the commencement of the argument to the jury, as required by section 65 of the Civil Practice act. (State Bar Stat. 1935, chap. 110, par. 193, p. 2447.) The defendant therefore is not in a position to complain of the court's refusal to give them.

We have made a careful examination of the record relative to other errors complained of involving admission and rejection of evidence, conduct of the State's attorney, the weight of the evidence, and the giving and refusal of instructions, and find no errors therein which would warrant a reversal of the judgment of the trial court. In our opinion defendant was accorded a fair and impartial trial, free from substantial error. The evidence is sufficient to sustain the verdict.

The judgment of the criminal court of Cook county is affirmed. The clerk of this court is directed to enter an order fixing October 15, 1937, as the time when the original sentence of death entered in the criminal court of Cook county shall be executed.   *Judgment affirmed.*