## Commonwealth *v.* Musto, Appellant.

Argued November 22, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*R. J. Puderbaugh,* with him *J. Banks Kurtz,* for appellant.

*Chester B. Wray,* District Attorney, with him *John M. Klepser,* Assistant District Attorney, and *S. H. Jubelirer,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 3, 1944:

After fourteen years of married life Mary Musto left her husband Michael, returned to her parental home, and obtained a divorce. Other legal proceedings followed—a habeas corpus action in which Michael sought custody of their children, a suit in replevin brought by Mary to recover some household goods, and an action, also by Mary, to obtain support for the children. In connection with this last proceeding a hearing was had in the court of quarter sessions at which both parties were present, and a support order was made. After Mary left the courtroom Michael followed and shot and killed her as she reached the front steps of the building. He was tried and convicted of first-degree murder and the jury affixed the penalty of death. The verdict was amply justified by the evidence, the only defense offered, that of insanity, being wholly unconvincing.

With commendable zeal for the protection of his client, counsel for defendant raised several points in the court below and now repeats them in this court for the purpose of securing a new trial.

His first objection is directed to the alleged insufficiency of the complaint upon which the arrest was made, because, while it charged that "One Michael Musto did, wilfully, deliberately and with premeditation, kill and murder one Mary Musto," etc., it omitted an averment that the killing was "with malice aforethought." As the presence of malice characterizes and distinguishes the crime of murder, he urges that defendant could be indicted only for manslaughter and therefore his motion to quash the indictment should have been granted. It is true that a complaint or information must contain all the essential elements of the offense sought to be charged,

and, if it fails in this respect, it is not sufficient that the indictment supply them, because a defendant should not be required to answer a charge different from, and unrelated to, the one for which he was arrested and held to bail. But it is likewise true that an information need not employ the legal phraseology or possess the technical accuracy of an indictment or describe the crime as fully and specifically as is there required.[1] Here, the complaint charged not only that defendant *killed* Mary Musto but that he *murdered* her, a term which carried with it all the elements, including malice, necessary to constitute the crime of murder, and by alleging that the murder was committed "wilfully, deliberately and with premeditation" it sufficiently charged murder *in the first degree* as defined by the Act of June 24, 1939, P. L. 872, section 701.

Before the trial started the district attorney asked the court for permission to have the lawyer who had represented Mary Musto in some of the previous proceedings associated with him as special counsel. This was vigorously opposed on the ground that it would be impossible, by reason of the animosities engendered in the litigation between defendant and his wife, for such private counsel to participate in the trial with the fairness and high sense of responsibility required of a prosecuting attorney as a quasi-judicial officer. The court, however, granted the permission requested, and private counsel assisted the district attorney to some extent in the examination of witnesses, but he conducted himself in a manner which admittedly conformed to all ethical requirements and there is nothing in the record to indicate

---

[1] *Commonwealth v. Carson*, 166 Pa. 179, 183, 30 A. 985; *Commonwealth v. Gouger*, 21 Pa. Superior Ct. 217, 231, 232; *Commonwealth v. Campbell*, 22 Pa. Superior Ct. 98, 106, 107; *Commonwealth v. Miller and Burke*, 77 Pa. Superior Ct. 469, 471; *Commonwealth v. Grego*, 116 Pa. Superior Ct. 295, 176 A. 550; *Commonwealth ex rel. Jenkins v. Costello*, 141 Pa. Superior Ct. 183, 185, 14 A. 2d 567, 568; *Commonwealth v. Ginsberg*, 143 Pa. Superior Ct. 317, 324, 18 A. 2d 121, 125.

that he said or did anything during the course of the trial which in any way prejudiced defendant's rights. Even in a case where there was some doubt whether the proprieties had been, thus observed, this court sanctioned the participation in a first-degree murder case of private counsel acting as special assistant to the district attorney, although it stated that ordinarily special counsel should not be permitted to participate actively in conducting criminal trials: *Commonwealth v. Cicere*, 282 Pa. 492, 496, 128 A. 446, 448.

It is now claimed by defendant that the learned trial judge was disqualified by his having conducted the hearing on the application for support which immediately preceded the shooting. Apart from the fact that the right to raise this question was lost by defendant's going to trial without making any such objection, the judge was not disqualified merely because he might have been a witness in the case. There were available so many other witnesses as to what took place in the courtroom preceding the commission of the crime that there was no need for him to testify in regard thereto, (see Act of March 18, 1875, P. L. 30, sec. 1, cl. 1.), and, under such circumstances, there was neither ethical nor legal reason why he should not have presided at the trial: *Brown v. Bahl*, 111 Pa. Superior Ct. 598, 602, 170 A. 346, 348.

The sheriff was a witness in rebuttal for the Commonwealth as to admissions by defendant after the shooting. Objection was made, not on the ground that he was incompetent because of his having performed official duties in connection with the trial, but for the reason that his testimony was more properly admissible in the Commonwealth's case in chief. Only after conviction did defendant complain that he should not have been permitted to testify because he was, allegedly, in charge of the jurors during the trial and had performed other administrative functions.[2] The district attorney denies that the sheriff

---

[2] It is true that immediately after defendant's arraignment his counsel objected to the fact that a *deputy* sheriff, in searching for

had any contact with the jurors after they were chosen, and asserts that his only participation was that he had custody of defendant for a short time after the commission of the crime; the summoning of the panel and the talesmen was performed by deputies, and either they or other persons had charge of the jury. There is nothing to indicate that anything in connection with the mechanics of the trial could have led the jury to give greater weight to the testimony of the sheriff than that to which it was otherwise entitled, and he was not disqualified, either in the performance of the duties of his office or as a witness, by defendant's having sought him out when arrested and voluntarily conversing with him. Even where a sheriff made the information upon which the accused was arrested, it was held that the fact that, by virtue of his office, he assisted in the drawing of the jurors for the term was not a ground for quashing the array of petit jurors, or for quashing the indictment, or for an arrest of judgment after conviction, and it was stated that if he had been an eye witness of the crime and had arrested the perpetrator in view of it, no disqualification would have resulted from his knowledge or his action upon it: *Clark v. Commonwealth,* 123 Pa. 555, 573, 16 A. 795, 798. It is when the sheriff is a party to the proceeding or is related to a party by blood or affinity that such disqualification occurs: *Commonwealth v. Pascoe,* 39 Pa. Superior Ct. 163, 168, 169. In the present case the sheriff was not personally concerned in the outcome of the trial; his interest was not more than that of any other citizen, nor is there any intimation that he was guilty of misconduct.

Realizing that an attempt would be made to prove defendant insane at the time of the murder, the district attorney obtained permission from the court to have alienists examine him in prison. His counsel found fault

talesmen, had confined the selection to schoolteachers, and, in making that objection, counsel referred to him as a witness in the case, but no deputy sheriff was called as a witness.

with this proceeding on the ground that it constituted a violation of defendant's constitutional right not to be compelled to give evidence against himself. While the exact question thus presented has apparently not been ruled upon by either of our appellate courts, it has arisen in many other jurisdictions, and these have quite uniformly held that the constitutional immunity from self-incrimination does not apply to a compulsory examination to determine the prisoner's physical or mental condition for the purpose of testifying in regard thereto, provided, of course, that he be not compelled to answer any questions propounded to him by those making the examination.[3] The purpose of the constitutional provision is to prohibit the compulsory oral examination of the prisoner either before or at trial,—to prevent his being required to incriminate himself by speech or the equivalent of speech: *Commonwealth v. Valeroso,* 273 Pa. 213, 219, 220, 116 A. 828, 830. "The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material": per Mr. Justice HOLMES in *Holt v. United States,* 218 U.S. 245, 252, 253. "Not compulsion alone is the component idea of the privilege, but testimonial compulsion . . . Unless some attempt is made to secure a

---

[3] *Waters v. State,* 22 Ala. App. 644, 119 So. 248; *People v. Strong,* 114 Cal. App. 522, 300 P. 84; *People v. Bundy,* 168 Cal. 777, 145 P. 537; *Ingles v. People,* 92 Colo. 518, 22 P. 2d 1109; *Blocker v. State,* 92 Fla. 878, 110 So. 547; *People v. Krauser,* 315 Ill. 485, 146 N. E. 593; *People v. Chrisoulas,* 367 Ill. 85, 10 N. E. 2d 382; *Noelke v. State,* 214 Ind. 427, 15 N. E. 2d 950; *State v. Genna,* 163 La. 701, 112 So. 655; *Commonwealth v. Di Stasio,* 294 Mass. 273, 1 N. E. 2d 189; *State v. Petty,* 32 Nev. 384, 108 P. 934; *People v. Truck,* 170 N. Y. 203, 63 N. E. 281; *People v. Furlong,* 187 N. Y. 198, 79 N. E. 978; *State v. Nelson,* 162 Ore. 430 92 P. 2d 182; *State v. Cerar,* 60 Utah 208, 207 P. 597; *State v. Eastwood,* 73 Vt. 205, 50 A. 1077; *State v. White,* 113 Wash. 416, 194 P. 390; *State v. Coleman,* 96 W. Va. 544, 123 S. E. 580; *Jessner v. State,* 202 Wis. 184, 231 N. W. 634.

communication, written or oral,, upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one": 8 Wigmore on Evidence (3d ed.) 375, sec. 2265. As defendant in the present instance refused to converse with the alienists, but merely kept repeating to them that he wanted to see his counsel, the result was that no worthwhile examination could be made or testified to at the trial, so that the question raised as to defendant's rights under such circumstances is largely theoretical.

Defendant said on the witness-stand that he loved his wife and children and had instituted the habeas corpus proceeding to gain custody of his children because of his affection for them. The district attorney, in cross-examination, asked him whether the real purpose was not "so that you wouldn't have to go into the Army of the United States." Defendant's motion to withdraw a juror was overruled. It is argued that this was a violation of his rights under the Act of March 15, 1911, P. L. 20, which provides that a defendant shall not be asked any question tending to show that he has committed some other offense. That act is not relevant, for defendant was not guilty of a criminal offense in seeking possession of his children even though his motive in doing so may have been to escape the draft. Since he tried to establish before the jury that his feeling toward his family was one of affection, it was permissible for the Commonwealth to refute this by attempting to show that he was actuated by a selfish and not a loving motive.

Defendant's final grievance is that the charge of the trial judge unduly emphasized the contentions of the Commonwealth as compared with those of defendant. This complaint is wholly unwarranted. The charge was a model, not only of comprehensiveness and accuracy, but of scrupulous impartiality.

The judgment is affirmed, and it is ordered that the record be remitted for the purpose of execution.