## Commonwealth v. Kiely

*Wallace B. Eldridge, 3rd,* Assistant District Attorney, for Commonwealth.

*John J. Krasig,* for defendant.

WICKERSHAM, J., July 28, 1972.—On Sunday, August 1, 1971, a member of the Harrisburg City Police Department, while on routine patrol on Third Street, witnessed an automobile weaving from lane to lane. The operator was defendant, James Joseph Kiely. When stopped by the police, defendant had difficulty exiting from his vehicle, stumbled and fell out of the car. The investigating officers detected the odor of alcohol on his breath. He was given an immediate coordination test at the scene, consisting of walking a line, picking up a coin, touching his toes, which test he failed in the view of the officers. Officer Eubanks then read to defendant his rights,[1] he was placed under arrest and was asked whether or not he would consent to taking an alcohol balloon test[2] at Harrisburg City Hall, to which defendant consented.

---

[1] Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602 and Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758. Miranda holds that the prosecution may not use any statements, whether exculpatory or inculpatory, stemming from questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way, unless it demonstrates the use of procedural safeguards effective to secure the Fifth Amendment's privilege against self-incrimination. Accordingly, in the absence of other effective measures, the following procedures to safeguard the fifth amendment privilege must be observed: The person in custody must, prior to interrogation, be clearly informed that he has the right to remain silent, and that anything he says will be used against him in court; he must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation, and that, if he is indigent, a lawyer will be appointed to represent him.

[2] The Pennsylvania Vehicle Code of April 29, 1959, P. L. 58, as amended, sec. 624.1 provides, in pertinent part, that any person who operates a motor vehicle in this Commonwealth shall be determined to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: 75 PS §624.1.

A member of the Harrisburg Police Department administered the Mobatt Sobermeter Test to defendant, the results of which indicated that the amount of alcohol by weight in the blood of defendant tested was in excess of 21 one-hundredths (0.214) percent.[3] In addition, the officer testified that prior to the actual administration of the Mobatt Sobermeter Test, he had the opportunity to observe and speak to defendant, that defendant admitted that he had consumed alcoholic beverages and further that defendant walked with a staggering gait and his speech was slurred.

Prior to trial on the charge of driving under the influence of liquor,[4] defendant filed a motion to suppress the evidence of the Commonwealth.[5] Thereafter, defendant pled not guilty, waived a jury trial and following the introduction of evidence was found guilty as charged.

The matter is now before this court on defendant's motion in arrest of judgment and motion for new trial and oral argument thereon before the court en banc. The principal thrust of defendant's position is that the Harrisburg City police officers, who took him into

---

[3] Under the aforementioned section of The Vehicle Code, section 624.1, if chemical analysis of a person's breath, blood or urine shows that the amount of alcohol by weight in the blood of the person tested is 10 one-hundredths (0.10) percent or more, it shall be presumed that defendant was under the influence of intoxicating liquor.

[4] Act of April 29, 1959, P. L. 58, sec. 1037, 75 PS §1037, which provides that it shall be unlawful for any person to operate a motor vehicle while under the influence of intoxicating liquor.

[5] Rule 323 of the Pennsylvania Rules of Criminal Procedure provides that defendant or his attorney may make application to the court to suppress any evidence alleged to have been obtained in violation of defendant's constitutional rights. The suppression hearing was held before Judge Richard B. Wickersham on February 9, 1972, and at the conclusion of such hearing, the court determined the evidence to be admissible.

custody, failed to advise him that he had a right not to submit to a chemical test such as is provided for by section 624.1 of The Vehicle Code. The pertinent section provides:

"§624.1 Intoxication chemical tests, etc.

"(a) Any person who operates a motor vehicle or tractor in this Commonwealth, shall be deemed to have given his consent to a chemical test of his breath, for the purpose of determining the alcoholic content of his blood: Provided, That the test is administered by qualified personnel and with equipment approved by the secretary at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor. Qualified personnel means a physician or a police officer who has received training in the use of such equipment in a training program approved by the secretary. If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons."

It is the further contention of defendant that his constitutional rights were violated in that the arresting police officers had defendant perform certain co-ordination tests at the scene of the accident prior to advising defendant of his rights under Miranda and Escobedo, supra.

In Commonwealth v. Bonser, 215 Pa. Superior Ct.

452 (1969), opinion by Judge Jacobs, defendant was arrested and charged with a violation of section 1037 of The Vehicle Code, driving under the influence of intoxicating liquor. The Commonwealth had contended that an individual arrested for driving under the influence of alcohol was not entitled to the Miranda warnings before being subjected to custodial interrogation. The Superior Court held that although the offense constituted a misdemeanor, the Miranda warnings had to be given.

The Bonser holding is of no help to defendant in this situation because the arresting officers both testified that the required Miranda warnings were given to defendant prior to his being subjected to custodial interrogation and prior to his submission to a chemical test of his breath.

Defendant, however, points to Commonwealth v. Bloom, 50 D. & C. 2d 516 (1970), a decision by Judge Lippincott, of Delaware County. The Bloom case holds that, in a similar prosecution for driving under the influence of intoxicating liquor, defendant was "in custody" when he was pulled over to the side of the road by the police officers and told to produce his license and registration cards. The Bloom case, supporting the position of defendant in the instant situation, further held, at page 519:

"Did the police have to advise defendant of his Miranda rights prior to directing that he perform the 'walk-the-line' test? This question is resolved by Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), which also involved a conviction for driving while intoxicated. While the issue there was whether evidence of a blood test was admissible, the court emphasized that withdrawing of blood was to be distinguished from other situations: 384 U.S. 763:

" 'It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, . . . To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment.'

"In the instant case, defendant was not advised of his Miranda warnings until after he submitted to the 'walk-the-line' test. There is no evidence whatever to suggest that he volunteered to take the test or otherwise waived his constitutional rights, nor is there any indication that he was given a choice as to whether to take the test. The circumstances and testimony further show that the test was administered for the purpose of determining his guilt or innocence on the basis of his physiological responses, to wit, coordination, gait, mental alertness, etc. Both officers stated that the purpose of the test was to determine whether or not charges should be preferred.

"We, therefore, conclude that defendant was effectively denied his constitutional right against self-incrimination when he was directed to submit to the 'walk-the-line' test, and any evidence relating to his physiological responses thereto should have been suppressed prior to trial."

We reach a different conclusion. We hold that the Miranda warnings apply only to evidence of a testimonial nature gathered by the police in violation of defendant's rights. In the present case, the police officers who arrested defendant gave him his Miranda rights before they interrogated him, and before they sought his consent to take a chemical test of his breath. The coordination tests given to defendant at the scene of the arrest are nontestimonial in na-

654

ture. One of the leading cases distinguishing between testimonial and nontestimonial evidence is Holt v. United States, 218 U. S. 245 (1910), wherein, at page 252, the court said:

"Another objection is based upon an extravagant extension of the Fifth Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."

In Commonwealth v. Musto, 348 Pa. 300 (1944), the district attorney obtained permission from the lower court to have alienists examine defendant in prison, realizing that an attempt would be made to prove defendant insane at the time of the murder. His counsel found fault with the proceeding on the ground that it constituted a violation of defendant's constitutional right not to be compelled to give evidence against himself. Our Supreme Court held, at page 306:

". . . While the exact question thus presented has apparently not been ruled upon by either of our appellate courts, it has arisen in many other jurisdictions, and these have quite uniformly held that the constitutional immunity from self-incrimination does not apply to a compulsory examination to determine the prisoner's physical or mental condition for the purpose of testifying in regard thereto, provided, of course, that he be not compelled to answer any questions propounded to him by those making the exam-

ination. The purpose of the constitutional provision is to prohibit the compulsory oral examination of the prisoner either before or at trial, — to prevent his being required to incriminate himself by speech or the equivalent of speech: Commonwealth v. Valeroso, 273 Pa. 213, 219, 220, 116 A. 828, 830. 'The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material': per Mr. Justice HOLMES in Holt v. United States, 218 U.S. 245, 252, 253. 'Not compulsion alone is the component idea of the privilege, but testimonial compulsion . . . Unless some attempt is made to secure a communication, written or oral, upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, *the demand made upon him is not a testimonial one*' " (Italics supplied.)

See also Commonwealth v. Byrd, 421 Pa. 513 (1966), wherein the court, citing Commonwealth v. Musto, supra, with approval said at page 516:

"We reiterated this principle as recently as 1961. See Commonwealth v. Butler, 405 Pa. 36, 173 A. 2d 468, where we said (pages 44-45): '. . . The privilege against self-incrimination does not prohibit the introduction of evidence given by a defendant voluntarily: Commonwealth v. Bryant, 367 Pa. 135, 79 A. 2d 193 (1951), cert. den. 341 U.S. 954, 71 S. Ct. 1007. In addition, the personal characteristics and behavior of the defendant were open and observable to these doctors during his incarceration. This is not information of a written or spoken nature which the constitutional privilege against self-incrimination is designed to protect. See 32 A.L.R. (2d) 430; State v. Myers, 220 S.C. 309, 67 S.E. 2d 506 (1951); Hunt v. State, 248 Ala.

217, 27 So. 2d 186 (1946); Ingles v. People, 92 Colo. 518, 22 P. 2d 1109 (1933); Commonwealth v. DiStasio, 294 Mass. 273, 1 N.E. 2d 189 (1936); Noelke v. State, 214 Ind., 427, 15 N.E. 2d 950 (1938). In Commonwealth v. Musto, 348 Pa. 300, 35 A. 2d 307 (1944), this Court held that the constitutional immunity from self-incrimination *does not apply even to a compulsory examination to determine the defendant's physical or mental condition* for the purpose of enabling the examiner to testify in regard thereto, provided the defendant is not *compelled* to answer any questions propounded to him by the examiner. See also, Commonwealth v. Kravitz, 400 Pa. 198, 161 A. 2d 861 (1960).' " (Italics supplied.)

Furthermore, it has been specifically held in Pennsylvania that the right against self-incrimination does not apply to making a defendant walk in front of a jury (Commonwealth v. Fletcher, 387 Pa. 602 (1956)), nor to take part in a compulsory police line-up: Commonwealth ex rel. Manley v. Myers, Superintendent, 85 Dauph. 365 (1966), opinion by Judge Lipsitt.

We hold, accordingly, that the coordination tests given to defendant were completely outside the scope of testimonial evidence. The tests were, at best, pretrial efforts to identify a suspect as a probable perpetrator of a crime (Commonwealth ex rel. Manley v. Myers, supra), or an effort to establish probable cause for arrest. From the testimony offered, both at the suppression hearing and at the trial, it is clear that no questions were asked of defendant nor did he volunteer any statement either inculpatory or exculpatory prior to his formal arrest and the giving to him of the various Miranda warnings, all of which occurred after the coordination tests were given as aforesaid.

Accordingly, we hold that the coordination tests, being nontestimonial in nature, do not come under the

protection of the fifth amendment with regard to custodial interrogation and thus avoid the prohibition of the Miranda decision.

An additional reason supports the action of the police officers in this case. It should be noted that the citizenry has the right to be protected from frivolous and unnecessary arrest. The coordination tests which the police conduct prevent those unnecessary arrests, in that they have exculpatory as well as inculpatory value. Without them, any citizen who was driving after consumption of *any* amount of alcohol would be subject to the inconvenience and embarrassment of arrests in an attempt to confirm a slight degree of probable cause.

Finally, it is in the greatest public interest that our highways remain free from the hazard of the drunken driver. To accomplish this purpose, it is necessary that procedures be adopted and used which will expedite identification of drunkenness and at the same time protect those who are obviously not liable for arrest. It would seem that an overwhelming public policy exists in favor of declaring coordination tests like those given at the scene of the arrest of defendant, not in the nature of testimony and thus immune to the procedural requirements enunciated under Miranda and the Fifth Amendment.[6]

The final contention of defendant was that he was not advised of his "right" *to refuse to take* the chemical

---

[6] Even if we were to exclude the evidence of defendant's failure to pass the coordination test given to him by the police at the scene of the arrest, there was still more than adequate evidence, beyond a reasonable doubt, of defendant's intoxication, including his erratic operation of his motor vehicle on the highway observed by the police, the odor of alcohol on his breath, his staggering gait, his slurred speech, and the results of the chemical test of his breath given after he was placed under arrest and advised of his Miranda rights.

test of his breath. This argument, of course, flies in the face of the provisions of The Vehicle Code, sec. 624.1(a), supra, which require only that the police officer request defendant to submit to a chemical test. If a defendant refuses, upon request, to submit to a chemical test then the test shall not be given. Any person who operates a motor vehicle in this Commonwealth shall be deemed, under the statute, to have given his consent to the chemical test of his breath. No one is given a "right" to refuse the test. As was stated in Commonwealth v. Thompson, 52 D. & C. 2d 260 (1970), opinion by Judge Ditter, of Montgomery County, at page 265:

"Section (h) of the act states that the refusal to submit to a test may be admitted into evidence as a factor in determining innocence or guilt. This does not imply that one must be afforded the opportunity to refuse the test. Obviously, the legislators perceived that drivers who have been drinking will offer an infinite variety of human conduct. Some will be meek and mild; others belligerent and obstreperous. There will be the unconscious and the seriously injured, and the statute even recognizes that some will be dead.

"The statute was not meant to create problems for the police but rather to design a scientific method of determining probable innocence or guilt. Yet, at the same time, the legislature did not want drivers subjected to inhuman treatment and slipshod methods of testing. The protections afforded by the statute are concerned with the manner in which the test is conducted and not with whether it can be conducted at all.

"In the present case, petitioner never refused to submit to the test. She said nothing, and in no way indicated that she did not want the test performed. Her claim is, therefore, limited. Had she refused and then been physically forced to submit, we would have been faced with a totally different problem."

See also Commonwealth v. Conn, Dauphin County Court of Common Pleas (unreported), opinion by Judge Caldwell, dated April 14, 1972.

## ORDER

And now, July 28, 1972, the motions for a new trial and in arrest of judgment are denied and the district attorney is directed to call defendant for sentencing.