William Harger, Appellant, *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued November 8, 1974, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*Silvio P. Cerchie,* for appellant.

*Eric Pearson,* Special Assistant Attorney General, with him *Robert J. Shostak,* Special Assistant Attorney General, for appellee.

OPINION BY JUDGE MENCER, January 17, 1975:

This is an appeal from an Opinion and Order of the Court of Common Pleas of Butler County finding the appellant, William Harger, guilty of the summary offense of violating Regulation No. 6 of Moraine State Park on August 27, 1972, which regulation is No. 31.47 promulgated by the Department of Environmental Resources (DER) and which prohibits operation of certain watercraft in State Park waters.

Regulation 31.47, entitled "Miscellaneous Prohibitions," states in pertinent part: "(a) Air propelled type engines, boats designed for racing, hydroplanes or aquaplanes, surfboards, rafts, houseboats, matteresses, un-

seaworthy watercraft or any craft sold as a 'toy' rather than a 'boat' shall be prohibited. . . . Novelty type watercraft of an unconventional design must have the specific approval of the Department. . . ."

Appellant was arrested and charged pursuant to the Act of June 24, 1939, P. L. 872, *as amended*, 18 P.S. §4937, which states in pertinent part: "Whoever wilfully, negligently or maliciously violates any of the rules made for the government of . . . State Parks . . . shall, upon conviction thereof in a summary proceeding be sentenced to pay a fine not exceeding fifty dollars ($50.00) for each offense, or imprisonment not exceeding ten (10) days, or both, with costs of prosecution. No conviction shall be had for any act committed in violation of this section, unless it shall affirmatively appear that copies of such rules or notices were prominently posted in, upon or about said lands. . . ."

Appellant was found guilty of the offense and was ordered to pay a fine of $25.00 and costs of $11.00. As above indicated, his appeal to the Court of Common Pleas (and subsequent de novo hearing) was equally unsuccessful.

The watercraft for which appellant was charged for operating on Lake Arthur is known as the Wooster Hellion. It weighs approximately 130 pounds and has a length of 7 feet, 7 inches, and a width of 4 feet, 5 inches. It accommodates only two persons and is powered with a mere 10 horsepower motor. Yet it can reach 30 m.p.h. on water because of its design, which is really the crux of the problem here.

The Commonwealth's expert witness, Captain Charles E. Leising, draftsman of the subject regulation and Pennsylvania Boating Law Administrator, testified that the craft is a *hydroplane* designed for speed and is prohibited as a hazard on crowded State Park waters. In fact, DER specifically indicated the Wooster Hellion as

prohibited on what must be described as an informal list distributed at Moraine State Park.

Appellant knew of the list and of the subject regulation but considered the latter inapplicable to the Wooster Hellion. The criminal complaint which inexorably resulted specifically accused him of the offense using the following words: "The acts committed by the accused were: Violation of State Park Watercraft Regulations. In that he did unlawfully then and there operate a watercraft, to wit: a Wooster Hellion, *a novelty type watercraft of an unconventional design,* upon the waters of Lake Arthur, Moraine State Park, when said watercraft had not been approved for operation on State Park Waters . . . in violation of Section 937 Penal Code and State Park Watercraft Reg. No. 6 Revised 1971. . . ." (Emphasis added.)

Pennsylvania Rule of Criminal Procedure No. 132 (6)(b) (formerly Rule 104(6)(b)) provides that every complaint shall contain "(b) in a summary case, a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged."

A complaint or information must contain all the essential elements of the offense sought to be charged. *Commonwealth v. Musto,* 348 Pa. 300, 35 A. 2d 307 (1944). " 'It is not sufficient to charge that the defendant violated a specified section of a certain act without describing the action on the defendant's part constituting the alleged violation; the information should specifically describe the offense.' " *Commonwealth v. Kavusak,* 58 Pa. D. & C.2d 695, 696 (1972). Where a complaint lacks an essential element of an offense sought to be charged, defendant would have no means of determining whether or not he was guilty. *Commonwealth v. Davis,* 36 Pa. D. & C.2d 446, 448 (1965). "This means that the original formal written information or complaint against the

defendant must fully inform him of the precise charge against him which he will be called upon to meet." *Commonwealth v. Maurer,* 30 Pa. D. & C.2d 527, 528 (1963).

Appellant was charged with unlawfully operating "a novelty type watercraft of an unconventional design . . . when said watercraft had not been approved for operation on State Park Waters." We conclude that the complaint was sufficiently drawn, *see Commonwealth v. Pope,* 455 Pa. 384, 317 A. 2d 887 (1974), but that the Commonwealth failed to prove the charge as stated.

Appellant appeared at the de novo hearing before the lower court prepared to defend himself on the basis of the charges as stated in the complaint. However, the thrust of the Commonwealth's evidence was that appellant's boat had racing capabilities and, because of its planing hull (as opposed to a more conventional displacement hull), was really a hydroplane. Does the regulation prohibit hydroplanes *and* "novelty type watercraft of an unconventional design," or are they the same?

Captain Leising testified that "novelty doesn't mean anything. As I said what's novel today is custom tomorrow, I mean standard tomorrow, so that we didn't hang any weight on novelty type," and further that "[n]ovelty type craft, such as we had in mind, rubber duckies, inflatables, you go down to . . . or some other cheap store and buy something and take it onto the water, and blow it up and, which would provide no safety to the occupant at all. They are intended for the bathtub or your backyard pool, but they were coming onto the State lakes."

Captain Leising also testified that "the usual hydroplane class is, you know, it's a type of a boat that is a racing craft in which they do all kinds of races all over the country and the world. . . .", and that "long before this wording was put in the exact form now, the regulation which it supplanted had outlawed hydroplanes, as I remember, and that's why we had to broaden the inter-

pretation, *because hydroplane, I felt, was not enough.* . . . And you can't rely, you can't just say it's because it's a racing boat either, because you can race with a rowboat." (Emphasis added.)

Clearly, hydroplanes and novelty type watercraft were meant to be, and are, two different things. The Commonwealth proved only the former yet Harger was charged with the latter.

The lower court reasoned, since appellant was charged with a violation of Regulation No. 31.47, which prohibits both hydroplanes and novelty type watercraft, that the Commonwealth could prove Harger guilty as charged solely by evidence that a Wooster Hellion was a hydroplane. We conclude on this record that the Commonwealth also failed to prove this contention. Even if the Wooster Hellion's hull design made it a hydroplane, it was the opinion of the Commonwealth's own expert that to show merely that a boat could be classified technically as a hydroplane was insufficient evidence of a violation of the Regulation.

We are also concerned as to whether or not the list of prohibited watercraft was ever promulgated in accordance with the Commonwealth Documents Law, Act of July 31, 1968, P. L. 769, No. 240, 45 P.S. §1101 et seq. The record nowhere indicates compliance with that Act.

We are entirely sympathetic with the Department of Environmental Resources and Captain Leising's efforts to provide water safety on this Commonwealth's State Park waters, but, because of a failure of proof, we feel we must reverse the order of the lower court despite the lower court's able opinion in support thereof.

Reversed.