## Tinicum Fishing Co. *versus* Carter.

1. Where, under the authority conferred by an Act of Assembly, a bank and stone wall are erected to prevent an overflow of water from a river, damages cannot be recovered for an injury to a fishery occasioned thereby.

2. Such damages are merely consequential, and the constitutional provision, that compensation shall be made to the owner of property taken for public use, does not apply to such damages.

3. In a suit for damages for injury to a fishery, to prevent a recovery, it is not necessary to show that the fishery was entirely destroyed, but it is sufficient if it be shown that it was worthless.

March 28th 1879. Before SHARSWOOD, C. J., MERCUR, GORNOD, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Delaware county:* Of January Term 1876, No. 133.

This was an action commenced July 26th 1867, by P. B. Carter against the Tinicum Fishing Company, to recover damages for an alleged interference and injury to a fishing right on the river Delaware, of which the plaintiff claimed to own twelve-fourteenths. This was the fourth time this case was before the Supreme Court, having heretofore been reversed three times, reports of which will be found in 11 P. F. Smith 23 and 32, and 27 Id. 310.

At the last trial, the plaintiff claimed that the fishing right consisted in the right to draw nets from Hart's wharf to Darby creek, a distance of about a mile, between high and low-water marks, with the privilege to drag out the nets on the shore. A small portion of this mile is embraced within the boundaries of defendant's property. The plaintiff rested his title to the twelve-fourteenths upon user, and claimed that Joseph Carter had in 1830 acquired such title as he could devise, and that under him the plaintiff claims. The plaintiff's claim was for damages, which he alleged he was entitled to by reason of the erection of a pier and a stone wall and bank, which interfered with the drawing of the fishing nets.

The defendant offered to show that the bank and wall complained of, are part of a system of banks and walls erected by the Darby Meadow Company, incorporated by the Act of April 3d 1851, Pamph. L. 340, incorporating the Kingsessing and Tinicum Com-

pany, the main provisions of which were extended to the Darby Meadow Company, by the Act of March 2d 1854, Pamph. L. 139. The 11th section of the Act of 1851 is as follows:

"Sec. 11. It shall and may be lawful for the said managers, their officers and agents, from time to time, as they shall judge necessary, to enter upon all and every part of the lands within the boundaries of the said Kingsessing and Tinicum Meadow District, and to inspect, build, make, alter, enlarge, repair, rebuild, support and maintain all dams, banks, cross-banks, walls, sluices, flood-gates, footings, and other works and things necessary for the drainage, embankment and protection of the said tract, without regard to any allotments, divisions or districts heretofore made, it being the true intent and meaning of this act that all the dams, banks, walls and sluices, flood-gates, footing-drains and footings, or spaces so called, between the footing-drains and the banks, and other devices for the complete draining and embanking of the said tract of land (the divisions and internal ditches only excepted), shall be made and repaired by and under the superintendence of the managers aforesaid; and it shall and may be lawful for the said managers, their officers and agents, to enter on any lands in the said tract, and to take and carry away any stone, earth, gravel or other materials, which shall be required for the construction or repair of any of the works aforesaid, the value of which stone, earth, gravel or other material shall be paid to the owner of the lands, and shall be assessed in the manner hereafter provided."

The offer was, under objection, rejected. (First assignment of error.)

The defendant then offered to prove that the bank and wall had been kept, maintained and repaired by the Meadow company, during a period of time beginning more than six years prior to the commencement of the suit, and continuing up to the time of the trial.

This was also rejected. (Second to seventh assignments.)

The defendant also offered to show that the fishery was utterly worthless. Rejected. (Eighth assignment.)

The defendant submitted the following points, to which are appended the answers of the court:

3. The defendant has a right to erect and maintain the wall mentioned in this case, and is not responsible for the damages alleged to have been done thereby to the fishing rights alleged to belong to the plaintiff.

Ans. "This point is negatived unless the jury shall find that the erection of the wall at this precise place was absolutely necessary for the protection of the fast land from encroachments from the river, and that the old bank, when in proper repair, was not sufficient for that purpose." (Ninth assignment.)

6. If the jury believe that the erection of the pier, and the

[Tinicum Fishing Co. *v.* Carter.]

necessary effect thereof, destroyed the fishery, their verdict must be for the defendant.

Ans. " This is affirmed, but the fact of the erection of the piers having rendered the fishery less profitable is not enough. It must be an absolute obliteration of all privileges owned by the plaintiff. Under all the evidence, I do not think the plaintiff's right has been absolutely obliterated by the piers. If you shall find that, at any time, this fishery could be used with profit, then this point is not sustained." (Eleventh assignment.)

7. If the jury believe that the fishery has been destroyed by the operation of natural causes, their verdict should be for the defendant.

Ans. " This is affirmed; but the destruction should be full and complete—not partial." (Twelfth assignment.)

In the general charge, the court, Clayton, P. J., inter alia, said: " If you find, from the testimony, that this wall and bank interfere with the privileges to which Mr. Carter is entitled—the privilege of drawing the seine from the river to the fast ground, and maintaining the necessary appliances and appurtenances to his fishery; in a word, if you find that this wall interferes with his right, as it had been previously enjoyed, then you may find for the plaintiff, provided, you shall find the other questions submitted to you in his favor; but if you shall find from the testimony that this fishery has been so completely obliterated by natural causes that it is for all time destroyed, then, of course, there can be no recovery—not destroyed for a season, not rendered less valuable, but completely obliterated and swept out of existence; but if it is only injured and rendered less valuable than it was in 1853, they are not sufficient to warrant you in finding for the defendant. If you find that the erection of that wharf has completely destroyed the fishery, then you should find for the defendant, or if you shall find that natural causes have so destroyed it, then, of course, you will find for the defendant. You must recollect that the shore is liable to changes. The same causes which wash mud in, may wash it out again, and thus the fishery become valuable again. But, as I stated before, the evidence is for you." (Sixteenth assignment.)

The verdict was for plaintiff for $420. The defendant took this writ, among his assignments of error being those noted above.

*William Ward* and *Wayne MacVeagh*, for plaintiff in error.— Every fishery in the navigable waters of the state exists subservient to the will of the state: Tinicum Fishing Co. *v.* Carter, 11 P. F. Smith 29. Where an owner has acquired title to flats or lands in a state of nature, lying between high and low-water lines, his title to such land is clearly qualified, being subject to the public use and the right to improve the banks for useful public purposes: City to use *v.* Scott, 2 W. N. C. 52; Rutherford's Case, 22 P. F. Smith

[Tinicum Fishing Co. *v.* Carter.]

82. Various causes have combined to make the fishery worthless. The defendant should have been permitted to show these causes, and that the fishery was abandoned. It was error to apply a standard for the measure of damages such as that set up by the court, to say that the true questions were future possibilities, rather than present realities.

*Aaron Thompson* and *P. B. Carter*, for defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, May 7th 1879.

This case has been so thoroughly discussed in 11 P. F. Smith 21, and 27 Id. 310, that little more remains to be said. While the main point now raised was not expressly decided by either of the former cases, the principles by which it must be disposed of were clearly pointed out. It was held in Tinicum Fishing Co. *v.* Carter, 11 P. F. Smith 21, that the plaintiff below was not entitled to recover damages for the injury to his fishery resulting from the construction of a pier out into the river under a license from the port wardens of the city. "As the state," says Justice SHARSWOOD, "might itself have erected or caused to be erected the wharf and pier built by the defendants below, without any responsibility to the plaintiff for any consequential damages to his easement, or right of drawing his seine on the shore, so neither is the grantee or licensee of the state liable for such damage. As to him it is *damnum absque injuria*." This ruling is equally applicable to the erection and maintenance of the stone wall, which is the chief ground of the plaintiff's complaint. The Darby Meadow Company has the right under its charter to protect the meadows by the erection of walls to keep back the water, and if in doing so, the plaintiff's rights of fishery are interfered with or even destroyed, he is without remedy. His damages, if any, are merely consequential, and the constitutional provision that compensation shall be made to the owner of property taken for public use, does not apply to such damages: Monongahela Navigation Co. *v.* Coons, 6 W. &. S. 101. The meadow company having the right under its charter to construct the wall, it follows that if said wall had been constructed under the authority of, or license from the company, as a part of its system, the defendants would have a right to avail themselves of such authority or license as a defence to this action. Further, if the meadow company neither built, nor authorized its construction, yet if after the wall had been erected, they adopted and maintained it, and had continued to maintain it for more than six years prior to the commencement of this suit, it would be a complete answer to any claim for damages growing out of its construction.

It was certainly error to exclude from the jury evidence to show that in 1868 the fishery was utterly worthless. This error was

[Tinicum Fishing Co. *v.* Carter.]

cured to some extent subsequently by the admission of testimony of a similar character, and is referred to now to avoid misapprehension in the future.

The court below was called upon by the defendants' sixth and seventh points to say that if either by the erection of the pier, or from natural causes, the plaintiff's fishery had been destroyed, the verdict must be for the defendants. The learned judge affirmed these points, with the qualification, that the plaintiff's right must be absolutely obliterated; and that the destruction of the fishery must "be full and complete—not partial." Herein we think the learned judge fell into error. There was no question of the obliteration of plaintiff's right. That might continue long after its exercise had become impracticable or unprofitable. Nor was it a question of the absolute destruction of the fishery. It was certainly sufficient for the defendant to show that it was worthless. The plaintiff was suing for damages, and the destruction of a worthless thing could have done him no injury. If the fishery could no longer be fished to profit or advantage, it was worthless. The fact that a few stray shad could be caught there occasionally amounts to nothing.

The first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, twelfth and sixteenth assignments of error are sustained.

> The judgment is reversed, and a *venire facias de novo* awarded