WOLFE, P. J.,
— This is an appeal by C & C Oil Company from a conviction against it before a District Magistrate of Warren County finding that defendant violated section 200 of The Fish Law of December 15, 1959, P. L. 1779, 30 PS §200, and imposition of fine of $750 and costs.
Defendant advances three reasons for reversal, to wit: the complaint is insufficient in law to sustain the action (motion to quash); in the alternative, the Commonwealth has not carried its burden of proof of violation and, if defendant is, in fact, guilty, the fine imposed is excessive.
The statute controlling this case, commonly known as The Fish Láw provides:
“No person shall put or place in any waters within or on the boundaries of this Commonwealth any electricity, explosives of any poisonous substances whatsoever for the purpose of catching, injuring or killing fish, except that, for the purposes of fish manage *253 ment, agents of or persons authorized by the Commission under the supervision of the Executive Director may use any method or means of eradication or control of fish. No person shall allow any substance of any kind or character, deleterious, destructive or poisonous to fish, to be turned into or allowed to run, flow, wash or be emptied into any waters within this Commonwealth, unless it is shown to the satisfaction of the Commission or to the proper court that every reasonable and practicable means has been used to abate and prevent the pollution of waters in question by the escape of deleterious substances.”
Section 203 of the act provides:
“In prosecutions under this article for the pollution of waters by substances known to be injurious to fish or to fish food, it shall not be necessary to prove that such substances have actually caused the death of any particular fish.”
And finally, the penalty provided is a fine of not less than $100 nor more than $1,000.
Defendant does not deny that on or about May 31 and June 1, 1970, crude oil from its oil wells was permitted to flow into the Middle Branch Caldwell Creek by reason of malfunction of part of the equipment thereon but denies it was in any way negligent as to violate the statute.
Defendant argues the complaint failed to declare the stream in question was, in fact, inhabited by fish at the time of the commission of the act and, hence, the complaint must fall as the magistrate lacked jurisdiction, and if the magistrate lacked jurisdiction, the court, on appeal, likewise lacks jurisdiction: Commonwealth v. Miller, 43 Pa. C. C. 264 (1915).
In Commonwealth v. Miller it was held in cases of “appeal into the quarter sessions, many omissions and irregularities in the proceeding before the justice are *254 waived. But not so as to the matters contained in the complaint. The complaint before the justice takes the place of an indictment in the trial by jury, and everything that is essential to be set forth in an indictment must necessarily be contained in the information. The information is brought up and the court is bound by this just as much as a court and jury would be by the information or indictment in the trial of a case in the quarter sessions before a jury. Therefore, if the information is fatally defective, the justice was without jurisdiction and the court is likewise without jurisdiction.”
With the foregoing recited holding and procedure at that time, this court does not disagree. Defendant overlooks, however, the Rules of Criminal Procedure of the Commonwealth of Pennsylvania enacted May 1, 1970. The complaint in question was executed on July 24, 1970, and clearly comes in the purview of the rules.
The complaint under attack recites that defendant did violate the penal laws of the Commonwealth of Pennsylvania, to wit, a headwaters of Middle Branch Caldwell Creek, Eldred Township, on Sunday, May 31, 1970, and Monday, June 1,1970, in that defendant did unlawfully permit or allow oil, a substance deleterious, destructive and poisonous to fish to flow, run, wash and be emptied into the waters of the Commonwealth’s Middle Branch Caldwell Creek.
In all respects, the complaint complies substantially with Rule 104 of the Rules of Criminal Procedure. This rule provides, inter alia,
“Every complaint shall be substantially in the form set forth in Rule 105 [which the current complaint is tailored thereafter] and shall contain: (1) the name and address of the affiant; (2) the name of the defendant . . . ; (3) direct accusation to the best of the *255 affiant’s knowledge, information and belief, that the defendant violated the penal laws of the Commonwealth of Pennsylvania; (4) the date when the offense was to have been committed; . . . (5) the place where the offense is alleged to have been committed; (6) . . . a summary of the facts sufficient to advise the defendant of the nature of the offense charged, but neither the evidence nor the statute allegedly violated need be cited in the complaint . .
Rule 115 of the Rules of Criminal Procedure provides:
“If at any time prior to disposition of a case by an issuing authority it appears that a warrant, a summons, complaint or citation contains a substantive defect, the defendant shall be discharged, but nothing in this rule shall prevent the filing of a new complaint, and the issuance of process charging another offense in a proper manner.”
The comment accompanying this latter rule provides that substantive defects would include those cases where defendant or the offense is not properly named or described.
The transcript of the magistrate reveals that defendant moved to dismiss the case after full hearing because the act of defendant in permitting crude oil to flow into the stream in question was an accident and that there was no evidence presented that fish had, in fact, been killed from the oil. Only upon appeal did defendant raise the question that the complaint was fatally defective. Although jurisdiction of the subject matter can always be raised irrespective of what stage of the proceedings, this court is not of the opinion that the alleged defect vitiates the complaint in this case in light of the foregoing rules. See also Commonwealth v. Musto, 348 Pa. 300, wherein the law on this point has been summarized by the Supreme Court:
*256 “It is true that a complaint or information must contain all the essential elements of the offense sought to be charged, and, if it fails in this respect, it is not sufficient that the indictment supply them, because a defendant should not be required to answer a charge different from, and unrelated to, the one for which he was arrested and held to bail. But it is likewise true that an information need not employ the legal phraseology or possess the technical accuracy of an indictment or describe the crime as fully and specifically as is there required.”
It was the apparent intent of the legislature to delete technicalities in the pleading stage and if defendant was substantially informed of the nature of the violation, its time and place, his accuser and the date of the offense, this is sufficient. It also appears to the court that if the Commonwealth is relieved of the duty of proving that fish were actually killed because of the pollution, it is difficult to accept that the Commonwealth must prove there were actually fish in the Commonwealth’s stream at the time of the occurrence. In ascertaining the intention of the legislature in the enactment of a law, the courts may be guided by the presumption that the legislature does not intend a result that is absurd, impossible of execution or unreasonable: Act of May 28, 1937, P. L. 1019, Sec. 52, 46 PS §552.
Notwithstanding that the foregoing Fish Law was enacted verbatim from the Act of May 2, 1925, P. L. 448, in that Commonwealth v. Miller may appear to apply to the current case, this court is not bound by the procedure prevailing at that time, as the legislature has seen fit to abrogate the necessity of specific allegations to the detail that defendant now requests. *257 Defendant in this case has had ample notice of the charge against him and the nature thereof. At the hearing de novo it was established as a fact that there were no fish found killed as a result of the crude oil in the stream.
For this reason, the ruling of the court at time of hearing denying defendant’s motion to quash is confirmed.
Next, defendant complains that the Commonwealth has not carried its burden of proof beyond a reasonable doubt. With this, the court does not agree. The second sentence of the act under which defendant was charged exonerates one disposing of deleterious matters into Commonwealth waters if it is shown to the satisfaction of the court that every reasonable and practical means had been used to abate and prevent the pollution. Since this is a criminal statute in nature, the court interprets the duty of the Commonwealth to prove defendant guilty beyond a reasonable doubt and not merely by a fair preponderance of the evidence, as in civil cases. From all of the evidence heard by the court, the court is satisfied that the Commonwealth has met this burden. The Commonwealth’s evidence established that defendant has not complied with section 7E of article 600 of the Sanitary Water Board of the Commonwealth of Pennsylvania. This section provides, in part, that:
“. . . for all producing wells (oil) adequate provision shall be made to receive all salt water, oil, and basic sediment in tub tanks or suitable containers from which all waste and other petroleum residue shall be discharged into one or more sumps of adequate size or into equivalent settling devices, equipped with baffles, siphons, or other suitable means to prevent all *258 oil or other residue from reaching the waters of the Commonwealth.”
The evidence does not establish that if defendant had complied with this provision the oil spillage would not have occurred, but, notwithstanding, it was established by the Commonwealth that the oil well did not have any means to prevent the escape of oil in the event of failure of any of the well’s equipment. Defendant admitted that there were no devices or other suitable means to control the flow of the oil from entering the stream except for a pit that was dug at the time the well was drilled to hold the sand pumpings when the well was being bailed during the drilling operations, but there was no pit or other containing walls around the well to prevent the escape of oil from a malfunctioning well. The Commonwealth’s evidence established beyond any question that the amount of crude oil in the stream would be destructive or poisonous to fish and to fish food. Three separate samples of the water with the oil content therein were taken at different places on the stream and were laboratory tested by a chemist for the Commonwealth. The sample extracted 100 feet below the well was 90 percent oil, the sample extracted 400 feet below the well was 5,904 parts per million of oil and the third sample which was taken above or upstream from the well only contained three parts per million of oil which was attributed to surface runoff. The chemist testified that in his professional opinion 30 parts per million of oil is allowable and above this rate pollution is considered conclusive. Defendant’s only excuse or justification in not providing proper emergency equipment or other equipment to prevent what, in fact, occurred is that it would be economically unfeasible to operate the well under such control. Defendant further admitted that part of the equipment, namely, an old two- *259 inch flow pipe was used and a small hole was created in it permitting the oil to escape, but the main cause of the pollution admittedly was a defective “snuff box” which defendant claims it would not have any knowledge of its sudden malfunction. In the court’s opinion this was the very purpose of the regulation to control the flow of oil from producing oil wells. Oil seepage and breakage from producing wells is of common knowledge among oil producers. And, in this court’s opinion, defendant had taken no steps whatsoever whether or not in compliance with the statute or otherwise, to prevent the occurrence of the damage done in this case.
Finally, defendant argues that the fine is excessive in that no fish were, in fact, known to be killed notwithstanding the pollution. Obviously, the legislature left to the discretion of the court in setting the penalty based upon the amount of the damage done. The amount of damages to be recovered for an injury to fishing rights is generally such only as are commensurate with the injury done, having regard to all circumstances of each particular case. Where a fishery is fishless, no damage can be recovered: Tinicum Fishing Company v. Carter, 90 Pa. 85. However, the fact that damages are difficult to ascertain or that they cannot be calculated with mathematical accuracy does not constitute a bar to recovery: 36A C.J.S. 495, Fish. In this case, the stream in question had purified itself at time of trial and defendant had taken steps to correct the pollution. The court has nothing before it to indicate how the magistrate arrived at a fine of $750. This appears to be the first offense by defendant and that defendant acted promptly in correcting the situation after it was brought to its attention. Consequently, the court does not find that defendant *260 should be punished at the heavy end of the penal scale. The setting of the fine in this case appears to be more equitable and in line with the damage sustained if set at $500.
For the foregoing reasons, the court makes the following
ORDER
And now, to wit, November 9, 1970, the within appeal is allowed, the conviction of the magistrate is sustained and defendant ordered to pay a fine of $500, plus costs.